Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Bradley King (SBN 274399)
bking@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111; Fax: (310) 474-8585

Scott A. Bursor (SBN 276006)
scott@bursor.com
Sarah Westcot (SBN 264916)
swestcot@bursor.com
**BURSOR & FISHER, P.A.**
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512; Fax: (305) 679-9006

Nicholas A. Coulson (admitted *pro hac vice*)
ncoulson@ldclassaction.com
**LIDDLE & DUBIN, P.C**.
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015; Fax: 313-392-0025

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| JI KWON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC, and ROBINHOOD SECURITIES, LLC,<br><br>Defendants. | Case No. 4:20-cv-09328-YGR<br><br>Filed December 23, 2020<br><br>**MOTION OF PLAINTIFF JI KWON FOR CONSOLIDATION OF THE ACTIONS; APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br> The Hon. Yvonne Gonzalez Rogers<br><br>Date:          April 13, 2021<br>Time:         2:00 p.m.<br>Courtroom: Room 1, 1301 Clay Street, 4th Floor, Oakland CA 94612 |

| | |
|---|---|
| 1 | EDWARD LUPARELLO, individually and on behalf of all others similarly situated, | Case No. 4:20-cv-0938-YGR |

EDWARD LUPARELLO, individually and on behalf of all others similarly situated,

               Plaintiff,

    v.

ROBINHOOD FINANCIAL LLC,
ROBINHOOD SECURITIES, LLC, and
ROBINHOOD MARKETS, INC.

           Defendants.

Case No. 4:20-cv-0938-YGR

Filed January 15, 2021

---

SARKHAN NABI, individually and on behalf of all others similarly situated,

           Plaintiff,

    v.

ROBINHOOD FINANCIAL LLC, a
Delaware LLC, and ROBINHOOD
SECURITIES, LLC, a Delaware LLC,

           Defendants.

Case No. 4:21-cv-00755-YGR

Filed January 29, 2021

---

ROBEL GHEBREHIWET, on behalf of himself and all others similarly situated,

           Plaintiff,

    v.

ROBINHOOD FINANCIAL LLC, a
Delaware corporation, ROBINHOOD
SECURITIES, LLC, a Delaware corporation,
and ROBINHOOD MARKETS, INC., a
Delaware corporation,

           Defendants.

3:21-cv-00214-AJB-AGS (S.D. Cal.)

Filed February 4, 2021

## NOTICE OF MOTION AND MOTION

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on April 13, 2021 at 2:00 p.m., or as soon as counsel may be heard, the undersigned will move before the Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, 4th Floor, Oakland, California 94612, pursuant to Rule 42 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, for an Order:

      1.     Consolidating the related above-captioned actions (the "Actions")

      2.     Appointing Ji Kwon ("Movant") as Lead Plaintiff;

      3.     Approving Movant's choice of Ahdoot & Wolfson, PC, Bursor & Fisher, P.A., and Liddle & Dubin, P.C. as Lead Counsel; and

      4.     Granting such other and further relief as the Court may deem just and proper.

Movant respectfully submits the following memorandum in support of his motion for: (i) consolidation of the Actions; (ii) appointment of Movant as Lead Plaintiff; and (c) approval of Ahdoot & Wolfson, PC, Bursor & Fisher, P.A., and Liddle & Dubin, P.C. as Lead Counsel.

Dated:  March 8, 2021                 Respectfully submitted,

**AHDOOT & WOLFSON, PC**

  */s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
Bradley K. King (SBN 274399)
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*twolfson@ahdootwolfson.com*
*rahdoot@ahdootwolfson.com*
*bking@ahdootwolfson.com*

**LIDDLE & DUBIN, P.C**.
Nicholas A. Coulson (admitted *pro hac vice*)
Matthew Z. Robb (admitted *pro hac vice*)
975 E. Jefferson Ave.
Detroit, Michigan 48207

Tel: 313-392-0015
Fax: 313-392-0025
ncoulson@ldclassaction.com
mrobb@ldclassaction.com

**BURSOR & FISHER, P.A.**
Scott Bursor (SBN 276006)
Sarah N. Westcot (SBN 264916)
701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
scott@bursor.com
swestcot@bursor.com

# **TABLE OF CONTENTS**

**Pages**

I.   SUMMARY OF ARGUMENT ............................................................................. 1

II.  STATEMENT OF FACTS ................................................................................. 2

III. ARGUMENT ..................................................................................................... 4

   A.   Consolidation of The Actions Is Appropriate. ............................................. 4

   B.   Movant Ji Kwon's Appointment as Lead Plaintiff is Appropriate. ................. 5

       1.   The Procedure Required by the PSLRA ................................................ 5

       2.   Movant is Willing to Serve as Class Representative and has Satisfied the
            Notice Requirement. ............................................................................. 6

       3.   Movant Has the Largest Financial Interest In Relief Sought By the Class. ....... 7

            a.   There is No Doubt That Movant's Financial Interest in the Relief
                 Sought by the Class is Far Larger Than That of Edward
                 Luparello. ..................................................................................... 11

       4.   Movant Satisfies the Requirements of Rule 23(a). ............................... 10

            a.   Movant's Claims are Typical of the Claims of all the Class
                 Members. ...................................................................................... 11

            b.   Movant Will Adequately Represent the Class. ................................. 12

   C.   Approval of Movant's Choice of Counsel Is Appropriate. ........................... 12

IV.  CONCLUSION ................................................................................................ 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Pages</u>**

3

<u>Cases</u>

4

*Booth v. Strategic Realty Trust, Inc.,*
    No. 13-cv-4921, 2014 WL 342625 (N.D. Cal. Jan. 27, 2014) ...................................... 7

5

*Burnett v. Rowzee,*
    No. 07-cv-393, 2007 U.S. Dist. LEXIS 89799 (C.D. Cal. Nov. 26, 2007) .................................. 4

6

*Crawford v. Honig,*
    37 F.3d 485 (9th Cir. 1994) ..................................................................... 12

7

*Ferrari v. Gisch,*
    225 F.R.D. 599 (C.D. Cal. 2004) ................................................................ 11

8

*Gen. Tel. Co. of the Southwest v. Falcon,*
    457 U.S. 147 (1982) ........................................................................... 11

9

10

*Gold v. Lumber Liquidators, Inc.,*
    323 F.R.D. 280 (N.D. Cal. 2017) ............................................................... 11

11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 11

12

13

*Haung v. Acterna Corp.,*
    220 F.R.D. 255 (D. Md. 2004) ................................................................. 11

14

*Hessefort v. Super Micro Computer, Inc.,*
    317 F. Supp. 3d 1056 (N.D. Cal. 2018)......................................................... 10

15

16

*Hufnagle v. Rino Int'l Corp.,*
    No. 10-cv-8695, 2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 14, 2011) ...................................... 4

17

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .......................................................... *passim*

18

19

*In re LendingClub Sec. Litig.,*
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) ......................................................... 11

20

*In re Milestone Sci. Sec. Litig.,*
    183 F.R.D. 404 (D.N.J. 1998) ................................................................. 11

21

*In re Oxford Health Plans, Inc. Sec. Litig.,*
    182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................ 11

22

23

*In re Twitter, Inc. Sec. Litig.,*
    326 F.R.D. 619 (N.D. Cal. 2018) .............................................................. 11

24

*Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Gecht,*
    No. 06-cv-7274, 2007 U.S. Dist. LEXIS 26529 (N.D. Cal. Mar. 22, 2007). ............................... 4

25

26

*Jermain v. Fluidigm Corp.,*
    No. 20-cv-6617, 2020 U.S. Dist. LEXIS 234646 (N.D. Cal. Dec. 14, 2020) ............................... 6

27

28

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
  No. 13-cv-5368, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014) ........................ 4

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ............................................................................................... 11

*Shreves v. Xunlei Ltd.*,
  No. 15-cv-4288, 2015 U.S. Dist. LEXIS 123745 (C.D. Cal. Sept. 15, 2015) ..................... 5

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ............................................................................. 4, 5

*Veal v. LendingClub Corporation*,
  No. 18-cv-2599, 2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) .......................................... 10

*Weisz v. Calpine Corp.*,
  No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ......................... 5

*Zhu v. USBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010) ............................................................................. 10

<u>**Statutes**</u>

15 U.S.C.
    § 78u-4(a) ......................................................................................................................... 5
    § 78u-4(a)(3)(A) ............................................................................................................... 5
    § 78u-4(a)(3)(A)(i)(II) ...................................................................................................... 5
    § 78u-4(a)(3)(B) ............................................................................................. 1, 5, 10, 12
    § 78u-4(a)(3)(B)(i) ........................................................................................................... 5
    § 78u-4(a)(3)(B)(ii) ...................................................................................................... 4, 5
    § 78u-4(a)(3)(B)(iii) ......................................................................................................... 7
    § 78u-4(a)(3)(B)(iii)(I) ................................................................................................. 6, 12
    § 78u-4(a)(3)(B)(iii)(II) ................................................................................................... 6
    § 78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................................... 12
    § 78u-4(a)(3)(B)(v) ......................................................................................................... 12

<u>**Rules**</u>

Fed. R. Civ. P.
    23 ............................................................................................................................. *passim*
    23(a) ........................................................................................................................... 10, 11
    23(a)(3) ............................................................................................................................ 12
    23(a)(4) ............................................................................................................................ 12
    42(a) ............................................................................................................................... 4, 5

## I.   SUMMARY OF ARGUMENT

Presently pending before the Court are the three above captioned class actions (the "Actions") brought on behalf of all others similarly situated, against Defendants Robinhood Financial LLC and Robinhood Securities, LLC (collectively, "Defendants" or "Robinhood").[1] The Actions allege that Robinhood violated its duty to its clients in connection with self-interested routing of those clients' securities orders to venues which paid Robinhood the most money, irrespective of whether such routing would optimize execution quality, in violation of the company's duty of best execution.

Plaintiff, Ji Kwon ("Movant"), who initiated the first-filed action, now moves for an order appointing him as lead plaintiff in this Action and approving his selection of Ahdoot & Wolfson, PC, Liddle & Dubin, P.C., and Bursor & Fisher, PA as Lead Counsel on behalf of the proposed Class in the Action. The Private Securities Litigation Reform Act of 1995, as amended ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).

During the Class Period, Movant engaged in millions of dollars' worth of securities transactions with Robinhood that were subject to the alleged wrongful conduct. To the best of his counsel's knowledge, and based on the only other leadership application filed to date (filed by Edward Luparello, ECF No. 28), there is no doubt Movant has the largest financial interest in the relief sought by the Class. *See* Declaration of Tina Wolfson filed concurrently herewith ("Wolfson Decl.") ¶¶ 3-4; *see also* Kwon Certification (ECF No. 7-1). Moreover, Movant satisfies the requirements of Rule 23 in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the

---

[1] This matter, the first-filed action against Defendants, was filed on December 23, 2020. The three other known related cases are: *Luparello vs. Robinhood, et al.*, No. 4:21-cv-00415-YGR (N.D. Cal.) (filed Jan. 15, 2021) and *Nabi vs. Robinhood, et al*, No. 4:21-cv-00755-YGR (N.D. Cal.) (filed Jan. 29, 2021). A fourth action, also captioned above, *Ghebrehiwet vs. Robinhood, et al*, No. 3:21-cv-00214-AJB-AGS (S.D. Cal.) (filed Feb. 4, 2021), is pending in the Southern District of California but subject to a motion to change venue filed by Defendants that is set for hearing April 29, 2021. Movant submits that consolidated of *Ghebrehiwet* with the three actions pending before this Court is appropriate if it is transferred here, which appears likely under the criteria of 28 U.S.C. § 1404 and the first-to-file rule.

Class. In addition, Plaintiff's chosen counsel (who are the counsel in two out of the four filed cases: *Kwon* and *Nabi*), should be approved as these firms have substantial expertise and experience in the litigation of large, complex class actions both in this district and in jurisdictions across the country.

## II.   STATEMENT OF FACTS

Robinhood, a multi-billion dollar mobile application and website investment service, has capitalized on a surge of first-time market investors by misleading and luring unsuspecting consumers to execute inferior market trades on the platform under the guise of "commission free" trading. (Plaintiff's Amended Complaint (ECF No. 7) ¶ 2.)

Robinhood is a Commission-registered broker-dealer and a member of the Financial Industry Regulatory Authority ("FINRA"). (*Id.* ¶ 20.) Broker-dealers such as Robinhood owe their customers a duty of "best execution." (*Id.* ¶ 32.) Best execution requires that a broker-dealer endeavor to execute customer orders on the most favorable terms reasonably available in the market under the circumstances. (*Id.* ¶ 32.) This case alleges that Robinhood instead systematically routed all of its clients' orders through venues from which Robinhood would extract maximum payments for itself, even though those venues did not provide "best execution" for its clients and did not obtain the best prices available in the marketplace.

Specifically, in or around May 2016, Robinhood began negotiations with a number of principal trading firms about potentially routing Robinhood customer orders to those entities. (*Id.* ¶ 50.) During those negotiations, certain principal trading firms told Robinhood that there was a trade-off between payment for order flow on the one hand and price improvement on the other: If Robinhood negotiated for higher payment for order flow revenue, according to the principal trading firms, there would be less money available for the principal trading firms to provide price improvement to Robinhood's customers. (*Id.* ¶ 51.) At least one principal trading firm communicated to Robinhood that large retail broker-dealers that receive payment for order flow typically receive four times as much price improvement for customers as they do payment for order flow for themselves—an 80/20 split of the value between price improvement and payment for order flow. (*Id.* ¶ 52.) Robinhood negotiated a payment for order flow rate that was substantially and unusually higher than the rate the principal trading firms paid to other retail broker-dealers—which resulted in approximately a 20/80 split of the value between price

improvement and payment for order flow. (*Id.* ¶ 53.)

Robinhood thus explicitly agreed to accept less price improvement for its customers than what the principal trading firms were offering, in exchange for receiving a higher rate of payment for order flow for itself. (*Id.*. ¶ 54.) However, Robinhood obscured this fact from its clients. (*Id.* ¶ 54.) In September 2016, Robinhood began routing customer orders directly and solely to principal trading firms. (*Id.* ¶ 55.) Although Robinhood was on notice that its high payment for order flow rates could lead to less price improvement, it did not conduct adequate, regular, and rigorous reviews to ensure that Robinhood was satisfying its best execution obligations. (*Id.* ¶ 57.) A committee to which the responsibility was delegated took no steps to determine whether Robinhood's payment for order flow rates were having a negative impact on the execution prices that Robinhood's customers received. (*Id.* ¶ 58.) Until October 2018, the Committee did not consider how Robinhood's price improvement statistics compared to those of other retail broker-dealers, or to the retail order execution market generally. (*Id.* ¶ 58.) In mid-2017, when one of the principal trading firms to which Robinhood routed order flow told Robinhood it would no longer agree to pay Robinhood's unusually high payment for order flow rates, but would pay a lower payment for order flow rate, Robinhood stopped routing customer orders to that principal trading firm. (*Id.* ¶ 59.)

By March 2019, Robinhood had conducted a more extensive internal analysis, which showed that its execution quality and price improvement metrics were substantially worse than other retail broker-dealers in many respects, including the percentage of orders that received price improvement and the amount of price improvement, measured on a per order, per share, and per dollar traded basis. Senior Robinhood personnel were aware of this analysis. (*Id.* ¶ 61.) However, Robinhood's Best Execution Committee did not take appropriate steps to assess whether, in light of this information, Robinhood was complying with its duty to seek best execution of customer orders. Robinhood's failure from October 2016 through June 2019 to conduct adequate regular and rigorous reviews that involved benchmarking its execution quality against competitor broker-dealers to determine whether it was obtaining the best terms reasonably available for customer orders, violated the firm's duty of best execution. (*Id.* ¶ 62.) Between October 2016 and June 2019, certain Robinhood orders lost a total of approximately $34.1 million in price improvement compared to the price improvement they would have received had they

- 3 -

been placed at competing retail broker-dealers, even after netting the approximately $5 per-order commission costs those broker-dealers were charging at the time. (*Id.* ¶ 81.)

Robinhood did not act in its clients' best interests and continually routed orders to venues that paid the most money to Robinhood in lieu of price improvement for its customers. Defendants thereby violated, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), various state laws, and have breached their fiduciary duties, in particular the duty of best execution. Movant initiated this first-filed action and seeks appointment as lead plaintiff in order to obtain redress for the Robinhood clients who were defrauded by this course of conduct.

## III.   ARGUMENT

### A.   Consolidation of The Actions Is Appropriate.

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. Fed. R. Civ. P. 42(a); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999); *Burnett v. Rowzee*, No. 07-cv-393, 2007 U.S. Dist. LEXIS 89799, at *5 (C.D. Cal. Nov. 26, 2007) ("The threshold issue [in determining consolidation] is whether the two proceedings involve a common party and common issues of fact or law." (citation omitted)); *Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Gecht*, No. 06-cv-7274, 2007 U.S. Dist. LEXIS 26529, at *5 (N.D. Cal. Mar. 22, 2007) ("[T]he main question for a court in deciding whether to consolidate is whether there is a common question of law or fact.").

Consolidation is particularly appropriate in securities class action litigation. *Hufnagle v. Rino Int'l Corp.*, No. 10-cv-8695, 2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 14, 2011); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-cv-5368, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014); *Shreves v. Xunlei Ltd.*, No. 15-cv-4288, 2015 U.S. Dist. LEXIS 123745 (C.D. Cal. Sept.

- 4 -

15, 2015). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g.*, *Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, at *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Actions pending before this Court present similar factual and legal issues, as they each involve the same subject matter, are based on the same wrongful course of conduct, and name the same Defendants. Because the Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Burnett*, 2007 U.S. Dist. LEXIS 89799, at *2.

**B.      Movant Ji Kwon's Appointment as Lead Plaintiff is Appropriate.**

**1.      The Procedure Required by the PSLRA**

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)   has either filed the complaint or made a motion in response to a notice;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

"The Ninth Circuit has characterized the PSLRA as 'provid[ing] a simple three-step process for identifying the lead plaintiff' in a securities fraud case." *Jermain v. Fluidigm Corp.*, No. 20-cv-6617, 2020 U.S. Dist. LEXIS 234646, at *6-7 (N.D. Cal. Dec. 14, 2020) (quoting *In re Cavanaugh*, 306 F.3d at 729).

> The first step consists of publicizing the pendency of the action, the claims made, and the purported class period. In the second step, the district court considers 'the losses allegedly suffered by the various plaintiffs' before selecting a 'presumptively most adequate plaintiff.' The court must view 'the one who 'has the largest financial interest in the relief sought by the class' and [who] 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure' as the 'presumptive lead plaintiff.' At the third step, the court must 'give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.'

*Id.* (citations omitted). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job. *Id.* (quoting *In re Cavanaugh*, 306 F.3d at 732).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

## 2. Movant is Willing to Serve as Class Representative and has Satisfied the Notice Requirement.

In accordance with the PSLRA notice requirement, on January 7, 2021, counsel in this first filed action caused a notice (the "Notice") to be published on *Globe Newswire* pursuant to Section 21D(a)(3)(A) of the Exchange Act. In the notice, counsel announced that it had filed a class action lawsuit on behalf of all persons in the United States or its Territories who were users of Robinhood between September 1, 2016 and June 30, 2019 (the "Class Period") and who placed orders in connection with which Defendants received payment for order flow. The notice stated that potential class members

had until March 8, 2021 (which is 60 days from the date of the press release) to seek to be appointed lead plaintiff. *See* Wolfson Decl. ¶ 7, Ex. C (Notice of Class Action Lawsuit). Movant has reviewed the complaint filed in the pending action and has timely filed his motion pursuant to the Notice.

### 3.  Movant Has the Largest Financial Interest In Relief Sought By the Class.

The Court shall appoint as lead plaintiff the movant or movants with the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). In this case, the financial relief sought is based on Robinhood's inferior price execution for each share traded through Robinhood, regardless of whether the trade resulted in a loss or a gain. At this early stage, each plaintiffs' transaction volume provides an estimate for purposes of determining the movant with the largest financial interest. The movant with the largest financial interest who meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff. *Booth v. Strategic Realty Trust, Inc.,* No. 13-cv-4921, 2014 WL 342625, at *1-2 (N.D. Cal. Jan. 27, 2014) (citing *In re Cavanaugh*, 306 F.3d at 726-30).

As demonstrated herein, Plaintiff Kown has the largest known financial interest in the relief sought by the Class. *See* Wolfson Decl. ¶¶ 3-4; *see also* Kwon Certification (ECF No. 7-1). Plaintiff Kwon has transacted more than 257,000 shares through Robinhood during the Class Period, worth over $6.1 million. *See* Wolfson Decl. ¶¶ 3-4; *see also* Kwon Certification (ECF No. 7-1). Movant thus has significant financial interest in the outcome of the case. Plaintiff Kwon's losses are typical of other Robinhood clients who were damaged when Robinhood routed their trades to maximize its own profits rather than provide best execution to the clients. Upon information and belief, no other qualified class members have sought, or are seeking, appointment as lead plaintiff with a larger financial interest and also satisfy Rule 23.

### a.  There is No Doubt That Movant's Financial Interest in the Relief Sought by the Class is Far Larger Than That of Edward Luparello.

In his application to be Lead Plaintiff (ECF No. 28), Edward Luparello, apparently attempts to lengthen the applicable Class Period and ignores a number of important metrics in comparing the amount of his financial interest to Movant, in order to falsely claim that his interest is greater. Movant's financial interest, however, is clearly greater under any analysis. The fact is that Movant transacted more shares and more trades both during the Class Period alleged in this case, as well as during Luparello's alleged

Class Period. Not only did Movant conduct more trades, but his greater financial interest is even more evident when looking beyond that single data point and considering all applicable metrics.

Luparello's analysis of the Applicants' respective stakes is deficient for several reasons. *First*, he fails to provide the Court with the dollar value of the transactions he claims to have made through Robinhood, making it impossible to meaningfully compare one of the most important metrics. *Second*, using the data Luparello does provide, his financial interest in the litigation pales in comparison to that of Movant here (both in terms of the number of transactions and the number of shares transacted). In what may be an attempt to circumvent this fact, Luparello seeks to inflate the appearance of his stake in this litigation by including the transactions made outside the Class Period (those he made in the latter half of 2019, as well as in 2020.) His counsel facilitates this by pleading a class definition that continues through the end of 2020 without any adequate justification given the facts of this case. Incredibly, his complaint takes the SEC's description of Robinhood customers' losses, verbatim, and then replaces the end date of "June 2019" with "June 16, 2020."

Because of the nature of the damages in this case, the best estimate of each movant's comparative stake available at this point involves a review of several key metrics: total shares, total transactions, and total dollar value. Luparello's certification provides no information about the dollar value of the shares he has transacted, so any claim he can make to the largest financial stake must be based on the number of shares or transactions.[2] But contrary to Luparello's assertion, Movant (Plaintiff Kwon) transacted in far more shares and far more transactions than Luparello, whether the analysis ends in June of 2019 as it should, or in June of 2020, as Luparello contends.

As Luparello acknowledges, "it is not possible at this early, pre-discovery stage to precisely identify the amount of damages each individual has suffered as a result of Defendants' misconduct." (ECF No. 28 at 9:7-10.) Luparello states that he "believes he has the largest financial interest based on the length of time he was actively trading using Robinhood's brokerage services and the overall number of trades and the volume of shares at issue." (*Id.* 9:14-17.) Luparello does not distinguish between his

---

[2] Based on the information he has made available, it could well be that Luparello transacted exclusively in low value "penny stocks."

activity in the portions of 2019 before and after Movant's (Plaintiff Kwon) alleged Class Period ends but based on what he does report we know that between 134,922 (42.9%) and 294,680 (93.8%) of his 314,146 shares were transacted after June 2019. Similarly, between 82 (26.4%) and 290 (93.5%) of his 310 trades occurred after June 2019. Even if one assumes the implausible scenario that every single one of Luparello's 2019 transactions occurred before June 2019, Plaintiff Kwon transacted 77,756 more shares in 6,529 more transactions through June 2019.

Moreover, Luparello's averment of an overbroad class definition is detached from the facts of this case and appears to be designed to inflate his real financial interest here. As stated in the SEC's findings regarding the conduct that underlies this case,

> Robinhood's failure from October 2016 through June 2019 to conduct adequate regular and rigorous reviews that involved benchmarking its execution quality against competitor broker-dealers to determine whether it was obtaining the best terms reasonably available for customer orders, violated the firm's duty of best execution.

Wolfson Decl., Ex. B (*In the Matter of Robinhood Financial, LLC*, Administrative Proceeding File No. 3-2017, SEC Order Instituting Adminsitrative and Cease And Desist Proceedings, ¶ 30 ("SEC Order")). Luparello appears to have conflated the date on which Robinhood "certified to FINRA that they adopted and implemented all recommendations of the independent consultant as set forth in its report[,]"[3] a consideration which does not control here, with the actual date that the conduct at issue reportedly ceased (according to the SEC). This is demonstrated by Mr. Luparello's allegation that

> between **October 2016** and <u>**June 16, 2020**</u>, Robinhood orders lost over $34.1 million in price improvement compared to the price improvement they would have received had they been placed at competing retail broker-dealers, even after the $5 per-order broker commission costs.

(*Luparello*, Case No. 3:21-00415 [Doc. No. 1], 11:1-4 (emphasis added).) Other than changing the end date, this averment comes verbatim from the SEC Order, which originally appears as:

> [b]etween **October 2016** and <u>**June 2019**</u>, certain Robinhood orders lost a total of approximately $34.1 million in price improvement compared to the price improvement they would have received had they been placed at competing retail broker-dealers, even after netting the approximately $5 per-order commission costs those broker-dealers were charging at the time.

---

[3] SEC Order at ¶ 46.

(SEC Order at ¶ 42 (emphasis added).)

Even if late-2019 and 2020 trades could be appropriately considered, Movant has a far greater financial stake in this litigation in terms of both shares and trades transactions. Movant transacted some 626,938 shares in the second half of 2019 alone, *nearly double Luparello's reported transacted shares for all of 2016-2020. See* Wolfson Decl. ¶¶ 3-4; *see also* Kwon Certification (ECF No. 7-1). In any apples-to-apples comparison, Movant has a far greater stake in this litigation than does Luparello. Even after this exercise in gerrymandering, Luparello's stake in this litigation pales in comparison to Movant's.[4]

### 4.    Movant Satisfies the Requirements of Rule 23(a).

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Veal v. LendingClub Corporation*, No. 18-cv-2599, 2018 WL 5879645, at \*4 (N.D. Cal. Nov. 7, 2018); *In re Cavanaugh*, 306 F.3d at 730 n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *Zhu v. USBH Holdings, Inc.* 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining  requirements until the Lead Plaintiff moves for

---

[4] The other potential applicant, the Plaintiff in *Ghebrehiwet v. Robinhood Financial LLC et al.*, Case No. 3:21-cv-00214 (S.D. Cal.), has not filed any pleading providing facts regarding the amount of financial interest, and Movant is not aware whether an application will be filed by this Plaintiff. Plaintiff Sarkhan Nabi will not be filing an application to be appointed Lead Plaintiff.

1  class certification. *In re Cavanaugh*, 306 F.3d at 732; *Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D.

2  Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

3      As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R.

4  Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

5                    **a.      Movant's Claims are Typical of the Claims of all the Class Members.**

6      Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are

7  "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23

8  because: (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the

9  same course of conduct by Defendants; and (iii) his claims are based on the same legal issues. *In re*

10  *Twitter, Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018); *Ferrari v. Gisch*, 225 F.R.D. 599, 607

11  (C.D. Cal. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*,

12  987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50

13  (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct

14  from which the other class members' claims and injuries arise"). Rule 23 does not require that the named

15  plaintiff be identically situated with all class members. It is enough if their situations share a common

16  issue of law or fact. *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017) (citing

17  *Hanlon*, 150 F.3d at 1020.) A finding of commonality frequently supports a finding of typicality. *Gold*

18  *v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (citing *Gen. Tel. Co. of the Southwest*

19  *v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend

20  to merge)).

21      Movant plainly meets the typicality requirement of Rule 23 because (i) he has suffered the same

22  injuries as the absent class members; (ii) he has suffered as a result of the same set of wrongful conduct

23  by Defendants; and (iii) his claims are based on the same legal issues. Indeed, Plaintiff's claims are

24  functionally identical to the claims possessed by other Class members. Each of them to executed trades

25  through Defendants while Defendants were breaching their duty of best execution, and were damaged

26  thereby. Plaintiffs' claims are typical, if not identical, to those of the other members of the Class because

27  Plaintiff has suffered losses similar to those of other Class members and each of their losses result from

28

1   Defendants' common course of wrongful conduct. Accordingly, Plaintiff satisfies the typicality

2   requirement of Rule 23(a)(3).

3           **b.**        **Movant Will Adequately Represent the Class.**

4           Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the

5   representative party must "fairly and adequately protect the interests of the class." The PSLRA directs

6   the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant

7   are clearly aligned with the members of the putative Class and whether there is evidence of any

8   antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-

9   4(a)(3)(B); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

10           Movant's interests are clearly aligned with those of the other members of the Class. Not only is

11   there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a

12   significant and compelling interest in prosecuting the Actions based on the large financial losses he has

13   suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with

14   Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously

15   pursue the interests of the Class. In addition, Movant has retained highly experience class action counsel

16   and is submitting his choice of counsel to the Court for approval pursuant to 15 U.S.C. § 78u-

17   4(a)(3)(B)(v). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

18           Accordingly, at this stage of the proceedings, Movant has made the preliminary showing

19   necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15

20   U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because Movant has the largest financial stake in the outcome

21   of the litigation, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-

22   4(3)(B)(iii)(I) and should be appointed as such to lead the Actions.

23   **C.**        **Approval of Movant's Choice of Counsel Is Appropriate.**

24           The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court

25   approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of

26   counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-

27   4(a)(3)(B)(iii)(II)(aa).

28

Movant has selected Ahdoot & Wolfson, PC, Bursor & Fisher, P.A., and Liddle & Dubin, P.C. as the proposed Lead Counsel for the Class. Each of these firms has extensive experience in the management and litigation of complex nationwide class actions and are well qualified to represent the Class. *See* Wolfson Decl., Ex. A (firm resume); concurrently filed Declaration of Scott Bursor, Ex. A (firm resume); and concurrently filed Declaration of Nicholas Coulson ¶¶ 5-10. Moreover, a three-firm leadership structure is appropriate for a case of this scale, complexity, and significance, and each of the proposed lead firms will provide valuable expertise and significant resources to the Class.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Kwon respectfully requests that this Court: (i) appoint Ji Kwon as Lead Plaintiff; (ii) approve his selection of the law firms of Ahdoot & Wolfson, PC, Bursor & Fisher, P.A., and Liddle & Dubin, P.C. to serve as Co-Lead Counsel; and (iii) grant such other and further relief as the Court may deem just and proper.

Dated:  March 8, 2021                           Respectfully submitted,

**AHDOOT & WOLFSON, PC**

*/s/ Tina Wolfson*
Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
Bradley K. King (SBN 274399)
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585
*twolfson@ahdootwolfson.com*
*rahdoot@ahdootwolfson.com*
*bking@ahdootwolfson.com*

**LIDDLE & DUBIN, P.C**.
Nicholas A. Coulson (admitted *pro hac vice*)
Matthew Z. Robb (admitted *pro hac vice*)
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025
*ncoulson@ldclassaction.com*
*mrobb@ldclassaction.com*

**BURSOR & FISHER, P.A.**
Scott Bursor (SBN 276006)
Sarah N. Westcot (SBN 264916)

- 13 -

701 Brickell Ave, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 679-9006
*scott@bursor.com*
*swestcot@bursor.com*