C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Russell Taylor (State Bar No. 320375)
rtaylor@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Maeve L. O'Connor (appearance pro hac vice)
Elliot Greenfield (appearance pro hac vice)
Brandon Fetzer (appearance pro hac vice)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
Email: bfetzer@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE ROBINHOOD ORDER FLOW LITIGATION | Master File No. 4:20-cv-09328-YGR <br><br> **DEFENDANTS' NOTICE OF MOTION TO DENY CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:  October 19, 2021 <br> Time:  2:00 p.m. <br> Judge:  Hon. Yvonne Gonzalez Rogers <br> Ctrm:  1, 4th Floor |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

STATEMENT OF RELIEF SOUGHT ........................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. 2

PRELIMINARY STATEMENT .................................................................................................... 2

BACKGROUND ............................................................................................................................ 5

ARGUMENT .................................................................................................................................. 6

I. PLAINTIFF CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE AND SUPERIORITY REQUIREMENTS. ................................................................................. 6

   A. Individualized Issues Predominate Over Common Ones. ............................................ 7

      1. Plaintiff Cannot Establish Economic Loss on a Classwide Basis. ............................. 7

      2. Plaintiff Cannot Establish Reliance on a Classwide Basis. ...................................... 10

   B. A Class Action is Not Superior to Other Available Methods for Fairly and Efficiently Adjudicating this Case. ................................................................................................... 12

II. A CLASS CANNOT BE CERTIFIED UNDER RULE 23(B)(1) OR 23(B)(2). .................... 12

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128 (1972) .................................................................................................. 4, 10, 11

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ............................................................................................................ 12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ............................................................................................................ 12

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988) ................................................................................................ 4, 10, 11, 12

*Binder v. Gillespie*,
 184 F.3d 1059 (9th Cir. 1999) ............................................................................................ 11

*Desai v. Deutsche Bank Sec. Ltd.*,
 573 F.3d 931 (9th Cir. 2009) .............................................................................................. 11

*Ford v. TD Ameritrade Holding Corp.*,
 995 F.3d 616 (8th Cir. 2021) ............................................................................ 5, 7, 8, 9, 10

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
 No. 20-222, 2021 WL 2519035 (U.S. June 21, 2021) ....................................................... 11

*In re Moody's Corp. Sec. Litig.*,
 274 F.R.D. 480 (S.D.N.Y. 2011) ....................................................................................... 11

*In re Walls*,
 262 B.R. 519 (Bankr. E.D. Cal. 2001) ................................................................................ 7

*Klein v. TD Ameritrade Holding Corp.*,
 No. 14-cv-396, 2017 WL 1316944 (D. Neb. Apr. 7, 2017) ............................................... 10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 259 F.3d 154 (3d Cir. 2001) ............................................................................ 5, 7, 8, 9, 10, 11, 12

*Pearce v. UBS Painewebber, Inc.*,
 No. 02-CV-2409, 2004 WL 5282962 (D.S.C. Aug. 13, 2004) .......................... 7, 8, 10, 12

*Picus v. Wal-Mart Stores, Inc.*,
 256 F.R.D. 651 (D. Nev. 2009) ........................................................................................... 7

*Schwab v. E*TRADE Fin. Corp.*,
 285 F. Supp. 3d 745 (S.D.N.Y. 2018) ............................................................................... 11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008) .................................................................................................... 11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) .................................................................................................... 13

*Telco Grp., Inc. v. Ameritrade, Inc.*,
    No. 05-CV-387, 2006 WL 560635 (D. Neb. Mar. 6, 2006) ............................................ 10

*Telco Grp.*, *Inc. v. Ameritrade, Inc.*,
    No. 05-CV-387, 2007 WL 203949 (D. Neb. Jan. 23, 2007) ......................................... 7, 8

*Vinole v. Countrywide Home Loans*, *Inc.*,
    571 F.3d 935 (9th Cir. 2009) .......................................................................................... 7

**STATUTES**

Section 10(b) of the Securities Exchange Act of 1934 ....................................................... 3, 6, 11

Securities Litigation Uniform Standards Act of 1998 ..................................................... 3, 5, 6, 13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ......................................................................................*passim*

FINRA Rule 5310 ............................................................................................................... 5, 8

SEC Rule 10b-5 .................................................................................................................... 6, 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 19, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 1, Fourth Floor, of the United States Courthouse, 1301 Clay Street, Oakland, CA 94612, before the Honorable Yvonne Gonzalez Rogers, United States District Judge, Defendants Robinhood Financial LLC ("Robinhood Financial"), Robinhood Markets, Inc. ("Robinhood Markets") and Robinhood Securities, LLC ("Robinhood Securities") (collectively, "Robinhood" or "Defendants") shall and hereby do move the Court to deny class certification pursuant to Federal Rule of Civil Procedure 23.  Defendants' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and all pleadings and papers filed in this matter, and upon such other matters as may be presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Robinhood seeks an order denying class certification.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants submit this memorandum in support of their motion to deny class certification pursuant to Federal Rule of Civil Procedure 23.

## STATEMENT OF ISSUES TO BE DECIDED

Whether class certification should be denied because Plaintiff Ji Kwon ("Plaintiff") cannot satisfy the requirements of Federal Rule of Civil Procedure 23.

## PRELIMINARY STATEMENT

This lawsuit presents the unusual case where class certification should be denied at the outset, prior to discovery, because the case is fundamentally unsuited to class treatment. Plaintiff asserts a securities fraud claim based on an alleged breach of the duty of "best execution," which requires broker-dealers such as Robinhood to seek the most favorable execution terms reasonably available under the circumstances when routing customer trade orders to execution venues.[1] In *every such case*, courts have denied class certification, and with good reason: Unlike a typical securities class action, the elements of economic loss and reliance cannot be presumed or established based on common evidence on a classwide basis. Here, economic loss does not depend on a price decline in a single stock, but instead would require a fact-intensive inquiry into each of the hundreds of millions of trades during the putative class period to determine whether a better price reasonably could have been obtained for that exact trade at the precise moment when it was executed. Establishing reliance on any alleged misrepresentation would require a similar individualized inquiry, which the Supreme Court has repeatedly held generally precludes class certification. The factors that make this case unsuitable for class treatment are inherent to how trades are executed in the securities markets. Nothing in discovery can change the fundamental nature of this lawsuit and render it suitable for class certification.

Robinhood is a broker-dealer that offers customers the ability to invest, commission-free, through a self-directed trading platform. Customers place trades through Robinhood's website or smartphone applications, which are then routed to other broker-dealers for execution. Robinhood

---

[1] Robinhood Markets, the parent of Robinhood Financial and Robinhood Securities, is not a broker-dealer. Robinhood Financial serves as an introducing broker, and Robinhood Securities serves as a clearing broker. (CAC ¶ 21.)

receives payment from these other firms in exchange for routing orders to them – a legal, regulated, and common practice throughout the investment industry known as "payment for order flow." Plaintiff alleges that Robinhood's order routing practices and receipt of payment for order flow violated the duty of best execution because, unbeknownst to customers and despite Robinhood's alleged "promises" about execution quality, customers received inferior trade execution prices compared to what they might have obtained through Robinhood's competitors. Although Plaintiff asserts various state law claims relating to the alleged breach of the duty of best execution, those claims must be dismissed pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), as explained more fully in Robinhood's Motion to Dismiss the Consolidated Amended Complaint ("CAC"), leaving – at most – Plaintiff's securities fraud claim pursuant to Section 10(b) of the Securities Exchange Act of 1934.

In the event that Plaintiff's Section 10(b) claim survives dismissal, the Court should deny class certification under Rule 23(b)(3) because individualized issues with respect to economic loss and reliance predominate over common ones, and a class action is not superior to other available methods for adjudicating the controversy.

Courts, including the Third and Eighth Circuits, have denied class certification in every other best execution case in which plaintiffs have sought to certify a class pursuant to Rule 23(b)(3) because economic loss – an essential element of Plaintiff's Section 10(b) claim – cannot be presumed or established with common proof on a classwide basis. Economic loss cannot be presumed because a violation of the duty of best execution does not affect the market price of any particular security. Instead, the economic loss, if any, is the difference between the execution price the customer received through Robinhood and the "better price" allegedly available from a different source. Many factors go into determining the reasonable availability of a better price, including the market for the security (*e.g.*, price and volatility) and the size of the transaction, and each factor varies from class member to class member and trade to trade. Thus, the existence of economic loss depends on proof of the circumstances surrounding each trade, the other prices available at the time of each trade and, in some instances, the state of mind of each customer at that time. The courts in each of the other best execution cases unanimously agreed that

1 individualized issues predominated over common ones because the analysis of each of these
2 factors required a trade-by-trade review of the millions of trades placed during the relevant class
3 periods.  The holdings in those cases did not turn on any of the information gleaned during
4 discovery.  If anything, fact discovery – which in most of these cases was limited to the trading
5 records of the named plaintiffs and did not include any class discovery – only reinforced what was
6 already apparent: that economic loss could not be proven on a classwide basis.

7 There are no substantive differences between this case and the best execution cases in
8 which class certification was denied.  Discovery will add nothing because it cannot change that
9 individualized proof is necessary to establish economic loss.  Determining whether a putative class
10 member was harmed can be proved only through a customer-by-customer and trade-by-trade
11 analysis of the hundreds of millions of trades placed on Robinhood's platform during the nearly
12 four-year class period proposed by Plaintiff.  As noted above, that analysis involves a detailed
13 factual analysis of the market for the security at issue at the time the trade order was placed.
14 Notably, in the CAC, Plaintiff is unable to identify any specific trades that allegedly received
15 inferior execution.  Plaintiff's inability to identify any such trade without extensive factual
16 discovery highlights the highly individualized nature of the inquiry and demonstrates that class
17 treatment is improper.  Nor can Plaintiff rely on allegations of aggregate harm (CAC ¶ 82);
18 economic loss must be established as to each putative class member.

19 Individualized issues also predominate with respect to the element of reliance because,
20 unlike in a typical securities lawsuit, Plaintiff is not entitled to the presumption of reliance.
21 Instead, each class member must show that she directly relied on the alleged misrepresentations
22 giving rise to this case.  The fraud-on-the-market presumption of reliance, referred to as the *Basic*
23 presumption, is inapplicable because none of Robinhood's alleged misstatements affected the
24 market price of any of the securities in which Plaintiff traded.  Likewise, the presumption of
25 reliance available in certain omissions cases under *Affiliated Ute Citizens of Utah v. United States*,
26 406 U.S. 128 (1972), does not apply here because Plaintiff primarily asserts misrepresentation
27 rather than omission claims.  Nor does Plaintiff's "scheme" liability theory allow him to invoke a
28 presumption of reliance because the Supreme Court and Ninth Circuit have held that plaintiffs

cannot invoke a presumption of reliance where, as here, an alleged fraudulent scheme was not disclosed to the public. The Supreme Court has also made clear that the necessity for individualized proof of reliance precludes class certification.

Plaintiff also is unable to satisfy Rule 23(b)(3)'s superiority requirement because the predominance of individualized issues creates a logistical nightmare. It is difficult to imagine how this case could be tried. It would likely take years to analyze evidence regarding the millions of trades at issue as well as evidence of each customer's reliance on the alleged misrepresentations.

Plaintiff's pursuit of certification under Rules 23(b)(1) and (b)(2) fares no better. Rule 23(b)(1) is inapplicable because Robinhood is not obligated by law or necessity to treat any of the putative class members alike and this is not a limited fund case. Rule 23(b)(2) is inapplicable because Plaintiff's request for injunctive relief is tied to his state law claims, which must be dismissed under SLUSA and, in any event, Plaintiff does not allege that any of the purported misconduct is ongoing.

The Court should deny class certification.

## **BACKGROUND**[2]

A complete overview of the facts allegedly giving rise to this action can be found in Defendants' Motion to Dismiss, filed concurrently herewith. As relevant for purposes of this motion, Plaintiff alleges that Robinhood breached the "duty of best execution," which requires broker-dealers to execute customer orders at the best reasonably available price. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith*, *Inc.*, 259 F.3d 154,187 (3d Cir. 2001). "The duty regulates a broker's process of routing orders for execution, but does not guarantee a specific outcome." *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021). Determining what prices are reasonably available "in any particular situation may require a factual inquiry into all of the surrounding circumstances." *Newton*, 259 F.3d at 187 (internal quotations omitted). FINRA Rule 5310 directs broker-dealers to consider several factors, including the "character of the market for the security" and the "size and type of [the] transaction."

Plaintiff claims that Robinhood violated the duty of best execution because customer

---

[2] Allegations from the CAC are assumed to be true for purposes of this motion only.

1  orders were allegedly executed at "unfavorable market prices" throughout the September 2016 to
2  June 2020 class period, during which time millions of customers used Robinhood's trading
3  platform.  (CAC ¶¶ 23, 86, 98.)  Despite placing "several thousand[] transactions" through
4  Robinhood and claiming that Robinhood sought to maximize payment for order flow at the
5  expense of trade execution prices received by customers, Plaintiff fails to identify a single one of
6  his trades that could have received better execution.  (CAC ¶¶ 84, 92.)  Plaintiff also claims that
7  Robinhood falsely "promise[d] to offer commission free trading at best execution compared to the
8  offering of . . . competitors," but fails to allege that he was aware of, or read, any of Robinhood's
9  statements about order execution quality.  (CAC ¶ 94.)

Plaintiff asserts a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, in addition to various state law claims, including negligent misrepresentation and violations of California's Consumer Legal Remedies Act, and seeks to certify a class under Federal Rule of Civil Procedure 23(b)(1)-(3).  Plaintiff's state law claims are irrelevant for purposes of this motion because they are precluded by SLUSA, as explained in Robinhood's Motion to Dismiss.

## ARGUMENT[3]

### I. PLAINTIFF CANNOT SATISFY RULE 23(b)(3)'S PREDOMINANCE AND SUPERIORITY REQUIREMENTS.

Class certification is not appropriate under Rule 23(b)(3) because Plaintiff cannot show that common issues "predominate over any questions affecting only individual members" or that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Neither economic loss nor reliance – two essential elements of Plaintiff's Section 10(b) claim – can be presumed or established through common proof on a classwide basis, and the millions of mini-trials necessary to establish those elements on a customer-by-customer and trade-by-trade basis present insurmountable case management problems.

---

[3] Defendants' focus here on Rule 23(b) is not a concession that any of Rule 23(a)'s requirements can be satisfied.

While the Ninth Circuit has expressed the "unremarkable proposition" that the question of class certification "often" cannot be resolved before discovery, this case represents a clear exception to that general rule because no amount of discovery can overcome these obstacles. *Vinole v. Countrywide Home Loans*, *Inc.*, 571 F.3d 935, 937, 942 (9th Cir. 2009) (defendants may bring "'preemptive' motion[s] to deny class certification"); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 660 (D. Nev. 2009) (granting pre-discovery motion to deny class certification because plaintiff could not satisfy Rule 23(b)(3)'s predominance or superiority requirements).  Where, as here, it is clear as a matter of law that a class cannot be certified, "it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification." *In re Walls*, 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001) (granting pre-discovery motion to deny class certification).

### A.     Individualized Issues Predominate Over Common Ones.

#### 1.     Plaintiff Cannot Establish Economic Loss on a Classwide Basis.

Courts have uniformly denied class certification in all other best execution cases because economic loss cannot be presumed, as it typically is in securities fraud cases, or established without resort to individualized proof.  *See Ford*, 995 F.3d at 623-24 (holding that the "prevalence" of "individualized inquiries" necessary to establish economic loss in connection with breach of duty of best execution "preclude[d] class certification under Rule 23(b)(3)"); *Newton*, 259 F.3d at 190 (same); *Telco Grp.*, *Inc. v. Ameritrade, Inc.*, No. 05-CV-387, 2007 WL 203949, at *10 (D. Neb. Jan. 23, 2007) (same), *aff'd on other grounds*, 552 F.3d 893 (8th Cir. 2009); *Pearce v. UBS Painewebber, Inc.*, No. 02-CV-2409, 2004 WL 5282962, at *11 (D.S.C. Aug. 13, 2004) (same).

Cases relating to violations of the duty of best execution "differ from typical securities fraud cases under Rule 10b-5," where economic loss is often presumed on the basis that "the alleged fraud directly affects the price of a security." *Ford*, 995 F.3d at 621.  "When a broker's fraud directly affects the price of a security, the customer trading in that security in reliance on the broker's representation can easily demonstrate that, but for the broker's fraud, the customer's trade would have executed at a more favorable price." *Id.*  Here, by contrast, Robinhood's alleged

7
DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION – 4:20-cv-09328-YGR

Farella Braun + Martel LLP

breach of the duty of best execution impacted the execution prices that customers received from the execution venues to which it routed customer orders, but the market prices of the underlying securities were unaffected. *Newton*, 259 F.3d at 180; *Ford*, 995 F.3d at 624 ("violation of the duty of best execution" does not "necessarily cause a customer economic loss"). Thus, the economic loss, if any, suffered in connection with the alleged breach can be quantified only by taking the difference between the price at which the trade was executed and the "better price" that allegedly was reasonably available. *Newton*, 259 F.3d at 178.

Courts faced with best execution cases have unanimously determined that the reasonable availability of a better price for any particular trade cannot be established on a classwide basis because it requires a customer-by-customer and trade-by-trade review. *Ford*, 995 F.3d at 623 (stating that "individual evidence and inquiry" was necessary to "determine economic loss for each class member"); *Newton*, 259 F.3d at 190; *Telco*, 2007 WL 203949, at *10; *Pearce*, 2004 WL 5282962, at *11. The duty of best execution "regulates a broker's process of routing orders for execution, but does not guarantee a specific outcome." *Ford*, 995 F.3d at 624. FINRA rules direct broker-dealers to consider many factors in determining whether a particular price is the best reasonably available, including the "character of the market for the security (e.g., price, volatility, relative liquidity, and pressure on available communications)" and the "size and type of [the] transaction." FINRA Rule 5310(a)(1)(A)-(B). These factors "vary from class member to class member and, for each class member, from trade to trade." *Newton*, 259 F.3d at 187. Thus, whether a class member suffered economic loss from a given securities transaction requires "proof of the circumstances surrounding each trade, the available alternative prices, and the state of mind of each investor at the time the trade was requested." *Id.* The Eighth Circuit in *Ford* aptly described the significance of each class member's state of mind:

> Consider a trader who places two orders to buy shares of a stock, one that he cancels before it is executed, and a second that is identical to the first, but executed at a better price than would have applied to the first order. Even if he canceled the first trade because of a delay in execution caused by [defendant's] order routing practices, whether the cancellation caused economic loss depends on the trader's strategy. If he intended the second order to replace the canceled one, then he is better off than if his first order had been executed. But if he would have placed the second order even if the first order had been executed, then he might be worse off, because he will have fewer shares available to sell for a profit if the price of the

stock later goes up.

995 F.3d at 622-23.

This case is substantively indistinguishable from the other best execution cases in which class certification was denied. In *Ford*, for example, the plaintiff alleged that the defendant's order routing practices violated the duty of best execution by "systematically sending customer orders to trading venues that pa[id] the company the most money, rather than to venues that provide[d] the best outcome for customers." 995 F.3d at 619. The plaintiff offered an expert who claimed to have developed an algorithm to analyze the "hundreds of millions of data points" necessary to determine whether a trade could have been executed at a better price. *Id.* at 621. "Even with the proposed algorithm," however, the Eighth Circuit concluded that determining economic loss entailed individualized inquiries "inconsistent with the predominance requirement of Rule 23." *Id.* at 622.

As in *Ford*, Plaintiff alleges that Robinhood "profited extensively from unsuspecting consumers who executed trades on [its] platform at inferior execution prices compared to what consumers would have received" from other execution venues. (CAC ¶ 4.) The only way for the Court to determine whether that assertion is true is through a customer-by-customer and trade-by-trade analysis of the hundreds of millions of trades placed during the nearly four-year class period. Although Plaintiff alleges that "certain" Robinhood orders lost approximately $34.1 million in price improvement from October 2016 to June 2019 (CAC ¶ 82), "the ability to calculate the aggregate amount of damages does not absolve" Plaintiff from the "duty to prove each investor was harmed" by Robinhood's trade routing practices. *Newton*, 259 F.3d at 188. The "prevalence of these individualized inquiries precludes class certification under Rule 23(b)(3)." *Ford*, 995 F.3d at 623; *see also Newton*, 259 F.3d at 187 (describing the review of "hundreds of millions of transactions" as a "Herculean task" that "counsels against finding predominance").

It is telling that Plaintiff alleges in conclusory fashion only that his trades were not executed at the best prices reasonably available. (CAC ¶ 86.) Despite making "several thousand[] transactions" through Robinhood, he fails to identify a single one for which that is true. (CAC ¶ 84.) Plaintiff is likely to argue that he will be able to do so after discovery, but that simply

1 proves Defendants' point here:  If Plaintiff needs discovery to determine which, if any, of his

2 trades were executed at inferior prices, he is admitting that economic loss cannot be determined

3 without resorting to individualized proof.  Indeed, in *Ford*, *Newton,* and *Telco*, class certification

4 was denied despite the fact that the defendants had produced only trading records for the named

5 plaintiffs.  *See Ford*, 995 F.3d at 622 (noting that defendants "successfully moved to limit

6 discovery of class-wide trading data");[4] *Newton*, 259 F.3d at 178 (noting that the district court

7 relied upon "a sample analysis of twelve trades executed by defendants"); *Telco Grp., Inc. v.*

8 *Ameritrade, Inc.*, No. 05-CV-387, 2006 WL 560635, at *7 (D. Neb. Mar. 6, 2006) (limiting

9 discovery to the plaintiff's account activity because there was no indication that "extended

10 discovery" was "reasonably likely to yield support for the class allegations").[5]  To the extent

11 Plaintiff argues that expert discovery will overcome this deficiency, that contention has also been

12 rejected in other best execution cases.  *See Ford*, 995 F.3d at 621-22 (holding that "advanced

13 algorithm" could not overcome individualized nature of economic loss inquiry); *Newton*, 259 F.3d

14 at 188 ("But even if plaintiffs could present a viable formula for calculating damages (which they

15 have not), defendants could still require *individualized* proof of economic loss.") (emphasis

16 added).

17 **2. Plaintiff Cannot Establish Reliance on a Classwide Basis.**

18 The element of reliance also cannot be presumed or established through common proof on

19 a classwide basis.  Unlike traditional securities fraud cases where plaintiffs may rest on a

20 presumption that they relied on false or misleading statements under the fraud-on-the-market

21 theory (also known as the *Basic* presumption) or *Affiliated Ute*, which is available in certain

22 omissions cases, Plaintiff cannot rely on either presumption here.  Plaintiff cannot invoke the

23 fraud-on-the-market presumption because, as explained above, a breach of the duty of best

24 execution does not affect the market price of any securities.  *Newton*, 259 F.3d at 180; *Ford*, 995

---

[4] The lower court rejected the named plaintiff's request for classwide trading data because economic loss, if any, could be assessed based on the "representative plaintiffs' equity order data." *See Klein v. TD Ameritrade Holding Corp.*, No. 14-cv-396, 2017 WL 1316944, at *2 (D. Neb. Apr. 7, 2017).

[5] In the fourth case, the "parties engaged in staged class discovery."  *Pearce*, 2004 WL 5282962, at *1.

F.3d at 624.  Plaintiff cannot invoke the presumption of reliance created by *Affiliated Ute* because he "allege[s] both misstatements and omissions" and the case cannot be characterized as "one that primarily alleges omissions."  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999).  Indeed, Plaintiff claims that he relied on Robinhood's allegedly false "promises to offer commission free trading at best execution compared to the offerings of Defendants' competitors" in choosing to use Robinhood's trading platform – a statement that can only be characterized as an affirmative misrepresentation.  (CAC ¶ 94.)

To the extent that Plaintiff's Section 10(b) claim is premised on the existence of a fraudulent "scheme," the Supreme Court and Ninth Circuit have held that plaintiffs cannot rely on a presumption of reliance in cases like this, where the fraudulent scheme was not disclosed to the public.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008) (holding that plaintiffs cannot rely on the *Basic* presumption in fraudulent scheme cases because the deceptive acts are not "communicated to the public" and thus there is no fraudulent information "reflected in the market price of the security"); *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009) (holding that *Affiliated Ute* presumption is inapplicable "in a case involving some omissions, but also misrepresentations and secret manipulation").[6]

In the absence of these presumptions, individualized issues of reliance "ordinarily" defeat predominance and "preclude class certification" because each class member must demonstrate that they directly relied upon the fraudulent conduct allegedly giving rise to the lawsuit, something that Plaintiff himself fails even to allege.  *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, No. 20-222, 2021 WL 2519035, at *3 (U.S. June 21, 2021) (internal citation and quotations omitted); *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 494 (S.D.N.Y. 2011) (where presumptions of reliance were inapplicable, plaintiffs were unable to "establish reliance on a class-wide basis"); *Schwab v. E*TRADE Fin. Corp.*, 285 F. Supp. 3d 745, 753 (S.D.N.Y. 2018) (dismissing claims based on alleged failure to abide by duty of best execution because plaintiff failed "to allege that

---

[6] Although *Newton* held that it was appropriate to presume reliance under *Affiliated Ute* because the "defendants allegedly failed to disclose their trade execution practice," that holding is in direct conflict with *Stoneridge* and *Desai* because the plaintiff's claim was based on the existence of a scheme to defraud that was not disclosed to the public.  *Newton*, 259 F.3d at 177.

1  he actually read, or was otherwise aware of, E*TRADE's representations regarding its best
2  execution methodology"). Courts have uniformly held that the necessity for "proof of
3  individualized reliance" precludes class certification because "individual issues . . . overwhelm[]
4  the common ones." *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988); *see also Amgen Inc. v.
5  Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461-63 (2013) (absent presumption of reliance, class
6  certification is "ordinarily" precluded in securities cases "because individual reliance issues would
7  overwhelm questions common to the class"); *Pearce*, 2004 WL 5282962, at *10 (denying motion
8  to certify class based on broker-dealer's representations about trade execution quality because
9  "individual issues of reliance overwhelm common questions").

### B. A Class Action is Not Superior to Other Available Methods for Fairly and Efficiently Adjudicating this Case.

Plaintiff cannot show that a class action is "superior to other available methods for fairly and efficiently adjudicating" this case because the individualized inquiries described above "present insurmountable manageability problems." Fed. R. Civ. P. 23(b)(3); *Newton*, 259 F.3d at 192. At the very least, the Court would need to conduct mini-trials into the circumstances surrounding each trade placed on Robinhood's platform from September 1, 2016 to June 16, 2020. (CAC ¶ 98.) "With hundreds of millions of trades, it is difficult to imagine how this case can be tried." *Newton*, 259 F.3d at 191-92 (describing the "specter of adjudicating plaintiffs' claims at trial" as "daunting").

## II. A CLASS CANNOT BE CERTIFIED UNDER RULE 23(b)(1) OR 23(b)(2).

Class certification also is inappropriate under Rules 23(b)(1) and (b)(2). With respect to Rule 23(b)(1), neither of its prongs is applicable here. Rule 23(b)(1)(A) contemplates cases where the party is "obliged by law" to treat the members of the class alike (such as a "utility acting toward customers" or a "government imposing a tax"), or where the party "must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal citation and quotations omitted). Rule 23(b)(1)(B) "includes, for example, limited fund cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Id.* (internal

citation and quotations omitted).  Robinhood is not obligated by law or necessity to treat any of the putative class members alike and this is not a limited fund case.

With respect to Rule 23(b)(2), Plaintiff's request for "final injunctive relief or corresponding declaratory relief" is tied only to his state law claims, which are precluded by SLUSA.  (CAC ¶¶ 106, 158.)  It also makes no sense.  The proposed class period ends in June 2020, and there is no allegation that any of the purported fraud is ongoing.  (CAC ¶ 98.)  Indeed, the suit is explicitly premised on the fact that Plaintiff learned of the alleged fraud and is suing to recover his losses.  Plaintiff thus lacks standing to pursue prospective injunctive and declaratory relief because he fails to allege a threat of future injury that is "actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

## CONCLUSION

For the reasons set forth herein, the Court should deny class certification.

Dated:  June 29, 2021                    FARELLA BRAUN + MARTEL LLP

By:  */s/ C. Brandon Wisoff*
       C. Brandon Wisoff

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC