Nicholas A. Coulson (*pro hac vice*)
*ncoulson@ldclassaction.com*
Matthew Z. Robb (*pro hac vice*)
*mrobb@ldclassaction.com*
**LIDDLE & DUBIN, P.C.**
975 E. Jefferson Ave.
Detroit, Michigan 48207
Tel: 313-392-0015; Fax: 313-392-0025

Scott A. Bursor (SBN 276006)
*scott@bursor.com*
Sarah N. Westcot (SBN 264916)
*swestcot@bursor.com*
**BURSOR & FISHER, P.A.**
701 Brickell Ave, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512; Fax: (305) 679-9006

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*radhoot@ahdootwolfson.com*
Bradley King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111; Fax: (310) 474-8585

*Plaintiff's Co-Lead Counsel*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE ROBINHOOD ORDER FLOW LITIGATION | Master File No. 4:20-cv-09328-YGR |
| | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION** |
| | Date:     October 19, 2021 |
| | Time:     2:00 p.m. |
| | Judge:    Hon. Yvonne Gonzalez Rogers |
| | Ctrm:     1, 4th Floor |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................1

II.  BACKGROUND .........................................................................................................2

III. ARGUMENT ..............................................................................................................3

   A.   Legal Standard ..................................................................................................3

   B.   Defendants' Motion Is Premature ....................................................................4

   C.   Plaintiff Satisfies Rule 23 Predominance and Superiority
       Requirements .....................................................................................................6

      1.   Individual Issues Do Not Predominate ...............................................7

          a.   Plaintiff Can Establish Economic Loss on a Classwide
             Basis ..........................................................................................7

          b.   Plaintiff is entitled to a presumption of reliance. ...................11

             i.    Fraud-on-the-Market Theory .................................11

             ii.   *Affiliated Ute* Omissions Presumption .................15

             iii.  Fraudulent Scheme Liability Theory .....................17

             iv.   Fraud-on-the-Regulatory Process Theory .............18

          c.   A Class Action Is Superior to Individual Claims ...........................19

      2.   A Class Can Be Certified Under Rule 23(b)(1) And (b)(2) ........................20

IV. CONCLUSION .........................................................................................................21

1
2
3

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Abdo v. Fitzsimmons*,
  No. 17-cv-851-TSH, 2021 WL 616324 (N.D. Cal. Feb. 17, 2021).................................. 17, 18

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1970) ...................................................................................................... *passim*

*Amaraut v. Sprint/United Mgmt. Co.*,
  No. 19-cv-411-WQH-AHG, 2020 WL 8024170 (N.D. Cal. Jan. 14, 2020) .......................... 4

*Arthur Young & Co. v. U.S. District Court*,
  549 F.2d 686 (9th Cir. 1977).................................................................................................. 18

*Basic v. Levinson*,
  485 U.S. 224 (1988) ............................................................................................................... 12

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999)................................................................................................ 15

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975).................................................................................................. 15

*Carroll v. Wells Fargo & Co.*,
  No. 15-cv-2321-ECM (KAW), 2016 WL 4696852 (N.D. Cal. Sept. 8, 2016) ........................ 4

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020).................................................................................................... 8

*Castro Valley Union 76, Inc. v. Vapor Sys. Tech., Inc.*,
  No. 11-cv-299, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012)............................................... 20

*Cholakyan v. Mercedes-Benz USA, LLC*,
  796 F. Supp. 2d 1220 (C.D. Cal. 2011).................................................................................... 3

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ................................................................................................................... 8

*Cover v. Windsor Surry Co.*,
  No. 14-cv-5262, 2015 WL 4396215 (N.D. Cal. July 17, 2015)................................................ 5

*Crago v. Charles Schwab & Co., Inc.*,
  No. 16-cv-3938-RS, 2017 WL 6550507 (N.D. Cal. Dec. 5, 2017).............................. 7, 11, 17

*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009)............................................................................................ 12, 15

*Dodona I, LLC v. Goldman, Sachs & Co.*,
  296 F.R.D. 261 (S.D.N.Y. 2014)............................................................................................ 16

*Doninger v. Pac Nw. Bell, Inc.*,
  564 F.2d 1304 (9th Cir. 1977).................................................................................................. 4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   573 U.S. 804 (2014) ............................................................................................ 9, 12

*Farr v. Acima Credit LLC*, No. 20-cv-8619,
   2021 WL 2826709 (N.D. Cal. July 7, 2021) .............................................................. 6

*Fogarazzao v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................ 16

*Ford v. TD Ameritrade Holding Corp.*,
   995 F.3d (8th Cir. 2021) ........................................................................................ 10

*Gardner v. StarKist Co.*,
   No. 19-cv-2561-WHO, 2020 WL 6136091 (N.D. Cal. Oct. 19, 2020) ........................ 5

*Goldman Sachs Group, Inc. v. Ark. Teacher Ret. System*,
   141 S. Ct. 1951 (2021) ...................................................................................... 12, 13

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ................................................................................. 19

*Hayes v. MagnaChip Semiconductor Corp.*,
   No. 14-cv-7406418, 2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ......................... 19

*Hodges v. Akeena Solar*,
   274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................... 12

*Hoxworth v. Blinder, Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992) .................................................................................. 11

*In re Allstate Corp. Sec. Litig.*,
   No. 16-cv-10510, 2020 WL 7490280 (N.D. Ill. Dec. 21, 2020) .............................. 14

*In re Blech Sec. Litig.*,
   187 F.R.D. 97 (S.D.N.Y. 1999) .............................................................................. 19

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) ............................................................... 12, 13, 14

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. June 5, 2009) ............................................................. passim

*In re Outlaw Lab., LP Litig.*,
   No. 18-cv-840-GPC-BGS, 2019 WL 2358692 (S.D. Cal. June 4, 2019) ..................... 3

*In re Qualcomm Antitrust Litig.*,
   328 F.R.D. 280 (N.D. Cal. Sept. 27, 2018) ............................................................. 19

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42 (S.D.N.Y. 2013) ........................................................................ 11, 16

*In re UBS Auction Rate Sec. Litig.*,
   No. 08-cv-2967-LMM, 2010 WL 2541166 (S.D.N.Y. June 10, 2010) ................... 11, 16

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ........................................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2 F.4th 1199 (9th Cir. 2021) .............................................................................................. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal 2018) ................................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. 16-cv-3435, 2018 WL 1142884 (N.D. Cal. Mar. 2, 2018) ........................................ 15

*In re Walls*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001) ............................................................................ 5, 6

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................................ 3

*In re Worldcom*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................................ 8

*In re Zillow Group, Inc. Sec. Litig.*,
    No. 17-cv-1387, 2020 WL 6318692 (W.D. Wash. Oct. 28, 2020) .................................... 12

*Kaminske v. JP Morgan Chase Bank N.A.*,
    No. 09-cv-918-JVS (RNBx), 2010 WL 5782995 (C.D. Cal. May 21, 2010) ......................... 7

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) .............................................................................................. 4

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) ............................................................................................ 12

*Keck v. Alibaba.com, Inc.*,
    No. 17-cv-5672-BLF, 2018 WL 4181955 (N.D. Cal. Aug 30, 2018) .................................... 3

*LaDuke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) .......................................................................................... 20

*Lorenzo v. SEC*,
    139 S. Ct. 1094 (2019) ...................................................................................................... 17

*Munro v. University of Southern California*,
    No. 16-cv-6191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ........................................ 20

*New York City Employees' Ret. Sys. v. Berry*,
    616 F. Supp. 2d 987 (N.D. Cal. 2009) .............................................................................. 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    135 F.3d 266 (3d Cir. 1998) ............................................................................................ 16

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ......................................................................... 2, 10, 11, 16

*Nguyen v. Baxter Healthcare Corp.,*
    275 F.R.D. 503 (C.D. Cal 2011) ................................................................................ 4

*Pearce v. UBS Paine Webber, Inc.,*
    No. 02-cv-2409, 2003 WL 25518056 (D.S.C. Nov. 4, 2003) ................................. 11

*Pearce v. UBS Painewebber, Inc.,*
    No. 02-cv-2409, 2004 WL 5282962 (D.S.C. Aug. 13, 2004) ................................. 10

*Picus v. Wal-Mart Stores, Inc.,*
    256 F.R.D. 651 (D. Nev. 2009) .............................................................................. 5, 6

*Police Ret. Sys. of St. Louis v. Granite Constr., Inc.,*
    No. 19-cv-4744-WHA, 2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ...................... 9

*Ruegsegger v. Caliber Home Loans, Inc.,*
    No. 17-cv-907-DOC (KESx), 2018 WL 5993857 (C.D. Cal. Apr. 30, 2018).......... 5

*Ryan v. Jersey Mike's Franchise Sys.,*
    No. 13-cv-1427, 2014 WL 1292930 (C.D. Cal. Mar. 28, 2014) .......................... 3, 4

*Siemers v. Wells Fargo & Co.,*
    243 F.R.D. 369 (N.D. Cal. 2007) ....................................................................... 15, 16

*Silcox v. State Farm Mut. Auto. Ins. Co.,*
    No. 14-cv-2345-AJB (MDD), 2014 WL 7335741 (S.D. Cal. Dec. 22, 2014) ......... 5

*Sousa v. 7-Eleven, Inc.,*
    No. 19-cv-2142-JSL (RBB), 2020 WL 6399595 (S.D. Cal. Nov. 2, 2020) ............. 4

*Stonridge Inv. Partners LLC v. Scientific–Atlanta, Inc.,*
    552 U.S. 148 (2008) ................................................................................................ 18

*Telco Grp., Inc. v. Ameritrade, Inc.,*
    No. 05-cv-387, 2007 WL 203949 (D. Neb. Jan. 23, 2007) .................................... 10

*Thorpe v. Abbott Labs., Inc.,*
    534 F. Supp. 2d 1120 (N.D. Cal. 2008)..................................................................... 5

*Vinole v. Countrywide Home Loans, Inc.,*
    571 F.3d 935 (9th Cir. 2009) .............................................................................. 3, 4, 5

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .................................................................................................. 4

*Walters v. Reno,*
    145 F.3d 1032 (9th Cir. 1998) ................................................................................ 21

*Wellens v. Daiichi Sankyo Inc.,*
    No. 13-cv-581-WHO, 2014 WL 969692 (N.D. Cal. Mar. 5, 2014) ........................ 4

*Wilson v. Conitech Telecomms., Corp.,*
    648 F.2d 88 (2d Cir. 1981) ...................................................................................... 16

*Zola v. TD Ameritrade, Inc.*,
   172 F. Supp. 3d 1055 (D. Neb. 2016) ............................................................. 11, 17

## Rules

Fed. R. Civ. P.
   23(b)(1) .......................................................................................................... 21
   23(b)(1)(B) ..................................................................................................... 20
   23(b)(2) .......................................................................................................... 21
   23(b)(3) ...................................................................................................... 6, 19
   23(c)(1)(A) ....................................................................................................... 3

## Other Authorities

Arthur Levitt, S.E.C. Chairman, *Opening Statement on Market Structure Initiatives in the Options Market and Public  Disclosure of Order Routing Practices and Execution Quality*, https://www.sec.gov/news/speech/spch392.htm (July 25, 2000) ............................................. 14

David A. Lipton, *Best Execution: The National Market System's Missing Ingredient*, 57 Notre Dame L. Rev. 449 (1982) ............................................................................. 13

# I.    INTRODUCTION

Defendants, Robinhood Markets, Inc., Robinhood Financial LLC, and Robinhood Securities, LLC (collectively, "Robinhood" or "Defendants") bring a Motion to Deny Class Certification (ECF No. 69) (the "Motion") in an attempt to preclude Plaintiff Ji Kwon ("Plaintiff") from establishing the illegal conduct alleged in his Consolidated Amended Complaint ("CAC").  In bringing this Motion, Defendants claim that courts across the country have treated "payment for order flow" lawsuits in a uniform matter.  Motion at 11.  That is not the case.  Moreover, the instant action is easily distinguishable from the authority relied on by Defendants as far as the determination of class damages.  Defendants argue that a determination of economic loss would "require a fact-intense inquiry into each of the hundreds of millions of trades during the putative class period," and that such calculation is impossible without individualized proof.  Motion at 2, 7.  That is wrong.  Here, the Securities and Exchange Commission ("SEC") has determined a total customer disadvantage of $34,100,000.00 related to Robinhood's illegal payment for order flow practices during the class period.[1] This damages calculation was established after an extensive and thorough federal investigation into Robinhood's illegal conduct.  Notably, none of the plaintiffs in the cases relied on by Defendants presented the court with a total customer disadvantage at the class certification stage.  Robinhood does not deny the majority of the conduct alleged in the CAC.  Instead, Defendants seek to prevent Plaintiff from being able to establish the reliability of this calculation before discovery even begins.  Such a request is improper, especially this early in the proceedings.

Defendants' claim that class certification should be denied because reliance and economic loss cannot be presumed or established based on common evidence.  Motion at 3.  Defendants are wrong on both counts.  Plaintiff and the putative class are entitled to a presumption of reliance based on several different legal theories, including (1) fraud-on-the-market; (2) *Affiliated Ute* omissions presumption; (3) fraudulent scheme liability; and (4) fraud-on-the-regulatory process.  The presumption of reliance has been recognized by courts in similar cases.  *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 78-79 (S.D.N.Y. June 5, 2009) (finding presumption of reliance on behalf of putative class of investors after determining that the fraud-on-the-market doctrine applies to

---

[1] https://www.sec.gov/litigation/admin/2020/33-10906.pdf (last accessed July 21, 2021).

"misstatements about specific securities *as well as misstatements about the marketplace for those securities.*") (internal quotations omitted) (emphasis added); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 176 (3d Cir. 2001) (relying on *Affiliated Ute* in finding that a class of investors were entitled to a presumption of reliance "[w]hen defendants fail[ed] to disclose material information about a uniform practice involving the purchase or sale of securities."). Additionally, Plaintiff is not requesting a presumption of economic loss, as he can establish total class damages through the use of common evidence. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 80 (finding that Plaintiff could prove economic loss on behalf of the putative class "through the application of its algorithm to the NYSE trading data for the class period."). Like the *NYSE Specialists Securities Litigation*, Plaintiff has already provided the Court with a total customer disadvantage related to Defendants' conduct during the class period. Plaintiff will be able to further establish the reliability of this calculation through the discovery process.

For the foregoing reasons and those set out more fully below, Defendants' Motion should be denied.

## II.   BACKGROUND

Like many other broker-dealers, Robinhood derives most of its revenue from a practice called "payment for order flow" ("PFOF"). PFOF is a widely used industry practice utilized by broker-dealers to route customer trades to third-party market makers for execution. Although this practice is generally accepted and legal in the financial services industry, it is not without controversy. PFOF has recently come under scrutiny from the SEC due to the inherent conflict of interest it poses for brokerage firms.[2]

While PFOF generally remains legal as a practice, Robinhood's conduct went a step further, by exclusively contracting with market makers that would limit price improvement offered to Robinhood account holders so that Defendants could receive greater profits for itself. ¶¶ 49-63[3]. Such conduct prompted a federal investigation (the "Investigation") that resulted in fines from both the

---

[2] https://www.wsj.com/articles/robinhoods-debut-is-clouded-by-sec-scrutiny-of-payment-for-order-flow-11625655600 (last accessed July 30, 2021).

[3] Unless otherwise indicated, "¶" or "¶¶" refer to Plaintiff's Consolidated Amended Class Action Complaint and Jury Demand (ECF No. 62).

SEC[4] and the Financial Industry Regulatory Authority, Inc. ("FINRA")[5] totaling $66,500,000.00.  The Investigation uncovered a scheme related to Robinhood's PFOF practices that were unlike any other broker-dealer in the industry.  During the Investigation, the SEC determined a total customer disadvantage of $34,100,000.00 related to Robinhood's illegal PFOF practices during the class period.

Plaintiff now brings this Consolidated Amended Complaint on behalf of himself and all Robinhood account holders to recover from Robinhood's ill-gotten gains during the class period related to its PFOF scheme.

### III.    ARGUMENT

#### A.    Legal Standard

Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites for maintaining a class action and requires that the court must, at "[a]n early practicable time" "determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "[D]istrict courts have broad discretion to control the class certification process and whether or not discovery will be permitted . . . ." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (internal quotations marks omitted).  While preemptive motions to deny class certification are permissible, such motions are "disfavored" in this circuit and "may be denied as premature."  *See In re Outlaw Lab., LP Litig.*, No. 18-cv-840-GPC-BGS, 2019 WL 2358692, at *7 (S.D. Cal. June 4, 2019) (quoting *Keck v. Alibaba.com, Inc.*, No. 17-cv-5672-BLF, 2018 WL 4181955, at *2 (N.D. Cal. Aug 30, 2018)). This is because it is rare to strike the class definition at such an early stage in the proceeding.  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011).

In opposing a preemptive motion to deny class certification, Plaintiff has only a minimal burden.  *See Ryan v. Jersey Mike's Franchise Sys.*, No. 13-cv-1427, 2014 WL 1292930, at *4-5 (C.D. Cal. Mar. 28, 2014).  Because evidence is usually required to support a motion for class certification, Plaintiff's opposition to a preemptive motion must only make out a prima facie showing that there is

---

[4] https://www.cbsnews.com/news/robinhood-sec-fine-65-million/ (last accessed July 30, 2021).

[5] https://www.finra.org/media-center/newsreleases/2019/finra-fines-robinhood-financial-llc-125-million-best-execution (last accessed July 30, 2021).

a reasonable probability that the alleged class certification hurdles can be overcome.  *See id*. at *4 (citing *Doninger v. Pac Nw. Bell, Inc*., 564 F.2d 1304, 1313 (9th Cir. 1977)); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  "[T]he better and more advisable practice . . . is to afford the litigants an opportunity to present evidence as to whether a certification [is] maintainable."  *Vinole*, 571 F.3d at 942; *Nguyen v. Baxter Healthcare Corp*., 275 F.R.D. 503, 507 (C.D. Cal 2011) ("[A]s the Court denied Defendant's most recent motion to dismiss, Plaintiff's allegations must now be construed as stating a prima facie case for class relief . . . . the case is . . . in the stage where discovery must proceed expeditiously.").  In fact, courts in this district have noted that even a minimal prima facie showing may not be necessary where the plaintiff simply explains how she will substantiate her class claims.  *See Carroll v. Wells Fargo & Co.*, No. 15-cv-2321-ECM (KAW), 2016 WL 4696852, at *2 (N.D. Cal. Sept. 8, 2016) (*citing Wellens v. Daiichi Sankyo Inc.*, No. 13-cv-581-WHO, 2014 WL 969692, at *2 (N.D. Cal. Mar. 5, 2014)) ("[c]ourts routinely do not require [a prima facie] showing.").  Indeed, "[t]o deny discovery in [such cases] would be an abuse of discretion."  *Sousa v. 7-Eleven, Inc*., No. 19-cv-2142-JSL (RBB), 2020 WL 6399595 (S.D. Cal. Nov. 2, 2020) (citing *Kamm v. Cal. City Dev. Co*., 509 F.2d 205, 210 (9th Cir. 1975); *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-cv-411-WQH-AHG, 2020 WL 8024170, at *8-9 (N.D. Cal. Jan. 14, 2020) ("[t]he Court likewise finds that Plaintiffs sufficiently allege Rule 23 class action requirements in their complaint . . . . [t]herefore, the Court overrules Defendant's objection as to discovery being premature without a *prima facie* showing of Rule 23 class action requirements.").

### B.  Defendants' Motion Is Premature

Defendants argue that "class certification should be denied at the outset, prior to discovery . . . ."  Motion at 2.  That is wrong.

As a preliminary matter, the Ninth Circuit has made clear that some amount of discovery will almost always be necessary in class action practice because "often the pleadings alone will not resolve the question of class certification."  *See Vinole*, 571 F.3d at 942 ("[t]he propriety of a class action cannot be determined in some cases without discovery and . . . the better and more advisable practice . . . is to afford the litigants an opportunity to present evidence as to whether a class certification [is]

maintainable."). Defendants cite to *Vinole* in an attempt to support their position that "defendants may bring "'preemptive' motion[s] to deny class certification." Motion at 7. But Defendants completely omit a key fact: the *Vinole* defendant's preemptive motion was granted *only after months of discovery*. *See Vinole*, 571 F.3d at 942. Other courts have interpreted *Vinole* in its correct context. *See, e.g.*, *Cover v. Windsor Surry Co.*, No. 14-cv-5262, 2015 WL 4396215, at *7 (N.D. Cal. July 17, 2015) (emphasis added) ("In the [*Vinole*] case Windsor relies on, the Ninth Circuit instructed that preemptive motions to deny certification or to strike class allegations *should only be entertained where relevant discovery has occurred*…. The concerns that [defendant] raises are precisely the types of concerns addressed in a motion for class certification."); *Gardner v. StarKist Co.*, No. 19-cv-2561-WHO, 2020 WL 6136091, at *3 (N.D. Cal. Oct. 19, 2020) ("Motions to deny class certification, particularly with little to no discovery, are granted in rare circumstances. This is not one of them.").

In the present case, discovery has not commenced and Defendants' motion to dismiss is still pending. The Court has not yet issued a scheduling order for discovery or class certification purposes, the Parties have not conducted any class-related discovery, and a motion for class certification is not presently before the Court. "[A] motion for class certification is a more appropriate time to consider the class allegations in Plaintiff's complaint." *Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-2345-AJB (MDD), 2014 WL 7335741, at *9 (S.D. Cal. Dec. 22, 2014) (denying motion to strike class allegation because the defendant had not answered, the parties had not conducted discovery, and the plaintiff had not moved for class certification); *Ruegsegger v. Caliber Home Loans, Inc.*, No. 17-cv-907-DOC (KESx), 2018 WL 5993857, at *32-33 (C.D. Cal. Apr. 30, 2018) (even where class allegations appeared to be unsuitable for class treatment, Court would not preemptively deny class certification where discovery had not commenced and where defendants may have been in possession of evidence that could impact class certification); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments."). Given the early stage of the proceedings, the Court should find that Defendants' Motion is premature.

Defendants cite to *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009), and *In re Walls*, 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001) to support their contention that the preemptive

motion should be granted without discovery.  Motion at 7.  But both cases are readily distinguishable. In *Picus*, a deceptive marketing case, it was the plaintiff who argued that no discovery was necessary. 256 F.R.D. at 655.  The court denied class certification because the plaintiff definitively could not prove an inference of reliance for the classwide purchase of pet food because the action was "*neither a securities [case] or a failure to disclose [case].*" *Id*. at 659 (emphasis added).  In *In Re Walls*, an out-of-district bankruptcy case, the defendant's motion to deny class certification was granted because of a circuit split regarding the "ride through" procedure of debt reaffirmation. 262 B.R. at 525. Here, not only has no discovery taken place, but also, there is no circuit split that completely forecloses Plaintiff's possibility of recovery. Plaintiff is aware that this Court recently granted a defendant's preemptive motion to deny class certification in the *Farr v. Acima Credit LLC* action.  *See* No. 20-cv-8619, 2021 WL 2826709 (N.D. Cal. July 7, 2021).  But *Farr* is inapposite.  The *Farr* plaintiff could not satisfy typicality and adequacy under 23(a) because she was free from arbitration unlike the rest of the class.  *Id*. at *7.  Here, Defendants do not bring forth any such argument under 23(a) and no such class restriction exists.  And further, as detailed herein, Plaintiff has "identified . . . discovery[6] that would dictate [that defendant's motion be denied].  *Id*.

Plaintiff's case is not "fundamentally unsuited to class treatment."  Motion at 2.  As more fully set forth below, Plaintiff can reasonably show that he is able to satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23(b).[7]  Class certification is appropriate under Rule 23(b)(3) because Plaintiff can show that common issues "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Moreover, because the case is in its infancy and because Plaintiff has not had the opportunity to engage with discovery that will show why class certification is proper, Defendant's premature motion must be denied.

### C.    Plaintiff Satisfies Rule 23 Predominance and Superiority Requirements

---

[6] Plaintiff intends to seek discovery including, but not limited to, Defendants' internal trading data, Defendants' PFOF data, Defendants' internal communications, the SEC's price improvement calculations, and numerous securities specialists' expert reports.

[7] Defendants bring their motion primally challenging Plaintiff's ability to certify a class under Rule 23(b)(3)'s predominance and superiority requirements.

1

        **1.**       **Individual Issues Do Not Predominate**

2

        **a.**       **Plaintiff Can Establish Economic Loss on a Classwide Basis**

3         Defendants argue that class certification should be denied because economic loss cannot be

4 presumed or established "without resort to individualized proof." Motion at 7. Moreover, Defendants

5 assert that "[c]ourts have uniformly denied class certification in all other best execution cases…." *Id*.

6 That is wrong. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 69 (granting class certification

7 for a class of purchasers of NYSE-listed securities who were disadvantaged by conduct of defendant

8 trading firms.); *see also Crago v. Charles Schwab & Co., Inc.*, No. 16-cv-3938-RS, 2017 WL

9 6550507, at *7 (N.D. Cal. Dec. 5, 2017) (finding that plaintiffs in order flow class action had

10 adequately pled economic loss on behalf of the putative class at the pleading stage); *Kaminske v. JP*

11 *Morgan Chase Bank N.A.*, No. 09-cv-918-JVS (RNBx), 2010 WL 5782995, at *5 (C.D. Cal. May 21,

12 2010) ("[s]imply because other plaintiffs making similar allegations . . . have been unsuccessful at

13 the class certification stage . . . does not mean that the Plaintiff in this case should be deprived of an

14 opportunity to conduct discovery relevant to [class certification]." Plaintiff has already alleged a total

15 customer disadvantage of $34.1 million resulting from Defendants' improper business practices. ¶ 82.

16 Because Plaintiff has shown that he can establish classwide economic loss, class certification should

17 not be preemptively denied.

18         Defendants' Motion relies on caselaw from the Third and Eighth Circuits.  However,

19 Defendants inexplicably ignore legal authority from the Second and Ninth Circuits.  Particularly on

20 point is *In re NYSE Specialists Sec. Litig.*, a federal securities class action in the Southern District of

21 New York, where the alleged misrepresentations did not directly impact the price of a particular stock,

22 facts similar to those in the instant case. 260 F.R.D. at 78 (noting that "[r]ather than alleging wrongful

23 conduct that resulted in the value of security being artificially inflated, the [defendants] are alleged to

24 have profited from their position by trading for their own proprietary interest.").  In that case, the

25 improper trading activities of several specialist firms resulted in a total customer disadvantage of

26 $41,646,440 in violation of securities laws. *Id.* at 62.  There, the total customer disadvantage was

27 determined by utilizing a computer algorithm designed by the New York Stock Exchange. *Id.* at 66.

28 The plaintiff's experts relied on this algorithm in their reports establishing classwide economic loss.

*Id.* at 66-67.   The court granted class certification, finding that the plaintiff had established that it could prove economic loss through the application of the algorithm.  *Id.* at 80.  Defendant's argument that courts have "uniformly" denied class certification in cases like this is simply not true.

Defendants in *In re NYSE Specialists Sec. Litig.* relied on *Newton*, arguing, as Defendants do in the current Motion, that economic loss could not be established because it would require too individualized of an inquiry.  *Id.* at 79 (arguing that plaintiff "cannot prove economic loss without establishing, trade-by-trade, whether the customer received the price he or she would have received 'but for' the priority violation.").  The court rejected this argument, finding that economic loss could be established on a classwide basis:

> In this case, [plaintiff] does not ask the Court to apply any presumption of economic loss to its claims of market manipulation.  Rather, [plaintiff] has established that it can prove economic loss through the application of its algorithm to the NYSE trading data for the Class Period.  [Plaintiff] also claims that it can ascertain, again using the algorithm, the price an investor would have received "but for" the [defendants'] alleged misconduct.  *See* Corwin Report ¶¶ 62-67; *compare Newton*, 259 F.3d at 188 (denying certification *where plaintiffs' expert merely "projected" that he could devise a formula to measure damages on a class-wide basis, rather than providing an actual formula.).*

*Id.* at 80 (emphasis added).

Determinations of economic loss need not be free of individual issues.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013).  "Even if the district court concludes that the issue of injury-in-fact presents individual questions, however, it does not necessarily follow that they predominate over common ones and that class treatment is therefore unwarranted."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 80 (internal quotations omitted).  Defendants cannot skirt liability by attacking the allocation of damages this early in the proceedings.  *Id.* at 74 (relying on *In re Worldcom*, 219 F.R.D. 267, 302 (S.D.N.Y. 2003) ("When liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification.")); *see also Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) ("Individual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate.").

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 573 U.S. 804, 809, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2014).  Section 10(b) of the Exchange Act and the SEC's Rule 10b-5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security.  To recover damages for a violation of Section 10(b) and Rule 10(b)-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Police Ret. Sys. of St. Louis v. Granite Constr., Inc.*, No. 19-cv-4744-WHA, 2021 WL 229310, at \*5 (N.D. Cal. Jan. 21, 2021) (citing *Halliburton*, 573 U.S. at 267).

Plaintiff can prove all elements, including economic loss, through common evidence. Throughout the class period, Robinhood intentionally contracted with market makers that offered substantially less opportunities for price improvement for Robinhood customers. ¶ 54. Robinhood knowingly made material misrepresentations relating to its revenue sources and execution quality for customer trades. ¶¶ 56-63. Such conduct resulted in $34.1 million in customer disadvantage to Robinhood customers during the class period in violation of federal securities laws. ¶ 82; *see also Administrative Order*, File No. 3-20171 ¶ 42.[8]  Plaintiff has shown that he is capable of proving classwide economic loss at this stage in the proceedings, and should not be precluded from the discovery process to establish the reliability of his damages determination. *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 80 ("While it is true that the ability to calculate aggregate amount of damages does not absolve plaintiffs from the duty to prove each investor was harmed by the defendants' practice, plaintiffs have convinced this Court that common issues will predominate.").  To the extent that any intra-class conflicts present themselves over the course of discovery, such conflicts can be addressed through the creation of subclasses.  *Id.* at 74 ("To the extent that different formulas may apply to the calculation of any damages suffered . . . this Court can order certification of appropriate sub-classes at a later juncture within its broad discretion in arranging the structure of class action litigation.") (internal quotations omitted).

---

[8] https://www.sec.gov/litigation/admin/2020/33-10906.pdf (last accessed Aug. 20, 2021).

The caselaw relied upon by Defendants is distinguishable from the present controversy in several respects. First, in *none* of the cases Defendants cite did the plaintiff provide the court with total class damages. *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021) (denying class certification where expert maintained he was capable of determining classwide damages but had not done so); *Newton*, 259 F.3d 154 (3d Cir. 2001) (same); *Pearce v. UBS Painewebber, Inc.*, No. 02-cv-2409, 2004 WL 5282962 (D.S.C. Aug. 13, 2004) (same); *Telco Grp., Inc. v. Ameritrade, Inc.*, No. 05-cv-387, 2007 WL 203949 (D. Neb. Jan. 23, 2007) (same).

Additionally, *Pearce* concerned trades that were routed individually by hand. Defendant claimed that individualized inquiry was necessary because "the proposed class's trades (10,000 shares or more) were not automatically executed. As block orders, class trades were traded by hand, at the discretion of an individual trader, under the unique circumstances of the market at the time of the trade." 2004 WL 5282962, at *10. This is not the situation here, where Robinhood automatically executes all trades, regardless of size.[9] The automatically executed trades at issue here will not present the added individualized issues presented by the individually hand routed trades at issue in *Pearce*.

Finally, questions concerning the "class member's state of mind," miss the mark as well. The duty of best execution requires that brokers "use reasonable efforts to maximize the economic benefit to the client in each transaction." *Newton*, 259 F.3d at 173 (internal quotations omitted). This standard does not look to individual traders' reasons for trading, their trading strategies, or their state of mind when they execute the trade. It looks to whether the broker used reasonable best efforts to "maximize the economic benefit" to its customers. The standard looks at objective economic harm—not subjective harm. Moreover, the instant action brought on behalf of the putative class does not center upon issues related to delay in execution timing or incidental order cancellations. Instead, this lawsuit concerns the intentional routing of customer orders to market makers Robinhood contracted with to specifically provide poorer execution quality for its customers. ¶¶ 51-55. Whether a trade was delayed or inadvertently cancelled does not relate to Robinhood intentionally contracting for

---

[9]  https://robinhood.com/us/en/support/articles/stock-order-routing/ ("Our systems are built to automatically send your order to the market maker most likely to give you the best price, based on historical performance.")

1  substantially less price improvement at the expense of their account holders.  Such concerns are

2  unwarranted and have no bearing on the allegations of the CAC.

3      For the aforementioned reasons, Plaintiff will be able to establish economic loss on a classwide

4  basis.  Therefore, Defendants' Motion should be denied.

5               **b.        Plaintiff is entitled to a presumption of reliance.**

6      Defendants argue that class certification must be denied under Rule  23(b)(3)'s predominance

7  requirement because reliance "cannot be presumed or established through common proof on a

8  classwide basis."  Motion at 10.  That is wrong.  Plaintiff alleges that he and other Robinhood

9  customers have been harmed by Robinhood's concealed practice of purposefully routing orders only

10  to third party trading firms at disturbingly high rates that agreed to render Robinhood's demanded

11  payment for order flow, despite this knowingly causing its clients to receive inferior execution rates.

12  *See, e.g.*, ¶¶ 9, 55, 113.  Courts have consistently found that clients of brokers that have been harmed

13  by a concealed practice or unfulfilled duty are entitled to a presumption of reliance on their broker

14  complying with its legal duties.  *See Newton*, 259 F.3d at 177; *see also Hoxworth v. Blinder, Robinson*

15  *& Co.*, 980 F.2d 912, 924 (3d Cir. 1992); *Crago*, 2017 WL 6550507; *Zola v. TD Ameritrade, Inc.*,

16  172 F. Supp. 3d 1055, 1073 (D. Neb. 2016); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42,

17  47-49 (S.D.N.Y. 2013); *In re UBS Auction Rate Sec. Litig.*, No. 08-cv-2967-LMM, 2010 WL

18  2541166, at *26 (S.D.N.Y. June 10, 2010); *Pearce v. UBS Paine Webber*, *Inc.*, No. 02-cv-2409, 2003

19  WL 25518056, at *15 (D.S.C. Nov. 4, 2003). *Newton* relies on the presumption of reliance established

20  by *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 31 L. Ed.

21  2d 741 (1970).

22      Though only one theory is required, there are four distinct theories upon which Plaintiff and

23  the class are entitled to a presumption of reliance: (1) the 'fraud-on-the-market-theory'; (2) the

24  *Affiliated Ute* omissions presumption; (3) the fraudulent 'scheme liability' theory; and (4) the 'fraud-

25  on-the-regulatory-process' theory.  Plaintiff can adequately move for class certification based on each

26  theory and should not be precluded from proving reliance on a class-wide basis based solely on

27  Defendants' self-serving and incorrect assessments of the case.

28               **i.        Fraud-on-the-Market Theory**

- 11 -

Defendants claim that the fraud-on-the-market presumption of reliance "is inapplicable "because none of Robinhood's alleged misstatements affected the market price of any of the securities in which Plaintiff traded." Motion at 4. That is wrong. Robinhood has not, and cannot, meet its burden in showing a lack of price impact from its wrongful acts.

The fraud-on-the-market theory is based on the hypothesis that, in an open and developed securities market, stock prices are determined by available material information. *Basic v. Levinson*, 485 U.S. 224, 241, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); *see also Halliburton*, 573 U.S. at 283-84. This theory allows the plaintiff to connect causally the defendant's bad act with the plaintiff's decision to participate in the market by demonstrating that the defendant disseminated materially misleading statements into an "impersonal, well-developed market for securities," the "reliance of individual plaintiffs on the integrity of the market price may be presumed." *Basic*, 485 U.S. at 241; *see also Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 531-31 (N.D. Cal. 2009) ("the fraud-on-the-market presumption is triggered when the defendant simply injects material misstatements or omissions into an efficient market, and the plaintiff thereafter trades at a pertinent time."). "To rebut the [fraud-on-the-market] presumption . . . a defendant has the burden of "eliminat[ing] the possibility that a rational jury could find that the alleged misrepresentations and omissions misled the market." *Hodges v. Akeena Solar*, 274 F.R.D. 259, 269 (N.D. Cal. 2011) (citing *Kaplan v. Rose*, 49 F.3d 1363, 1376–78 (9th Cir. 1994)).

As a preliminary matter, Defendants cannot, in its preemptive motion to deny class certification, prove that the alleged deceitful conduct did not affect stock prices. *See Goldman Sachs Group, Inc. v. Ark. Teacher Ret. System*, 141 S. Ct. 1951, 1962-63 (2021) (holding that a10(b) Defendant has a heavy "*burden of persuasion*" rather than a light "*burden of production*" in showing that a misrepresentation did not lead to a distortion in price); *In re Zillow Group, Inc. Sec. Litig.*, No. 17-cv-1387, 2020 WL 6318692, at *8 (W.D. Wash. Oct. 28, 2020) (holding that defendant's rebuttal to fraud-on-the-market presumption is suited for trial or summary judgment, not class certification). As recently confirmed by the Supreme Court in *Goldman*, Defendants "must carry its burden" in order to "sever[] the link between the alleged misrepresentation and . . . [any] price received (or paid) . . . ." 141 S. Ct. at 1957-58 (citing *Basic*, 486 U.S. at 248). "[I]n most securities-fraud class actions

. . . the plaintiffs and defendants submit competing expert evidence on price impact" and "[t]he district court's task is simply to assess all the evidence of price impact" and determine whether it is more likely than not that the alleged misrepresentations had a price impact." *Id.* at 1963.  Other than a single conclusory statement in its memorandum of law (Motion at 12), Defendants have submitted nothing to "sever the link" between its wrongful acts and the prices that Plaintiff and the class executed trades at.  *See In re LDK Solar Sec. Litig.*, 255 F.R.D. at 527; *Goldman*, 141 S. Ct. at 1963.  Defendants' fraud-on-the-market argument is thus wholly inappropriate at this stage.

Defendants next argue that its "alleged breach of the duty of best execution impacted the execution prices that customers received"[10] . . . but [did not affect] the market prices of the underlying securities."  Motion at 8.  Defendants are wrong.  First, the only support provided for Defendants' bold claim is a single inapposite citation to *Newton* and *Ford* discussing economic loss.[11]  *Id.*  Second, Defendants' argument misses the mark because the fraud-on-the-market doctrine is applicable to misstatements about the marketplace for securities.  *See In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 78-79.  Defendants' argument that as a broker-dealer, the lack of adherence to the duty of best execution did not (and does not) affect the underlying price of any stock, is factually incorrect.[12]  *See id.* at 79.  In the national market system, the SEC has made clear that broker-dealer execution quality has an *extreme* impact on the market.  *See* David A. Lipton, *Best Execution: The National Market System's Missing Ingredient*, 57 Notre Dame L. Rev. 449 (1982) (investor confidence and market stability is "strengthened [or diminished] by a best execution policy."); Arthur Levitt, S.E.C. Chairman, *Opening Statement on Market Structure Initiatives in the Options Market and Public     Disclosure     of     Order     Routing     Practices     and     Execution     Quality*,

---

[10] Notably, Defendants concede that their breach of the duty of best execution *did* affect the prices at which Plaintiff's trades were executed.

[11] Defendant ironically cites to the wrong section (economic loss) from *Newton* when discussing the presumption of reliance.  ECF No. 69 at 8.  *Newton*'s on-point holding concerning the presumption of reliance on page 177 actually works against Defendant: "[Plaintiffs] have alleged that the broker-dealers failed to disclose their policy of executing NASDAQ trades at the NBBO price . . . . presuming reliance would be appropriate [here] because defendants allegedly failed to disclose their trade execution practice."

[12] "[H]ow and where [a plaintiff's] order is executed can affect the cost of [the] transaction and the price [paid] for the stock."  *See* https://www.investopedia.com/articles/01/022801.asp

1   https://www.sec.gov/news/speech/spch392.htm (July 25, 2000) (Execution quality effects market

2   integrity, and "without market integrity, there is no investor confidence, and without investor

3   confidence there is no market."). Robinhood has grown rapidly to become one of the largest broker-

4   dealers in the market. ¶¶ 21-23. By June 2019, Robinhood had 9 million approved customer accounts.

5   ¶ 23.[13]   Robinhood fundamentally alters the market and stock prices with great force. In sum, it is

6   undeniable that whether a broker-dealer, especially one of Robinhood's complexity and size, adheres

7   to its duty of best execution has a significant impact on the market and on value of individual

8   securities.

9           Here, Plaintiff has alleged that Defendants' plan, scheme, conspiracy, and course of conduct

10   constituted a fraud on the market, in that the price at which each stock is traded was presumably

11   impacted by Defendants' fraudulent information, thus injuring every investor who trades in any

12   particular security. ¶ 124.  Because individual stock prices are already affected by Robinhood's

13   presence as a broker-dealer, Robinhood's underlying deceitful conduct during the class period

14   tautologically had an extreme effect on the market. *See id.*  Through its lack of best execution and

15   concealment of its true behavior, Defendants' actions are a fraud to the public markets, as the

16   misleading and substandard trading execution quality adversely impacts the values of all securities

17   for which Defendants engage in trading activities. ¶ 155.  Through discovery, the parties will be in a

18   better position to know how Robinhood's deceitful conduct and poor execution quality affected

19   investor confidence and the market holistically.  Specifically, any internal communications and SEC

20   data will be paramount.  *See In re LDK Solar Sec. Litig.*, 255 F.R.D. at 531 ("[S]ome appropriately

21   defined group of investors who traded at pertinent times are likely to share common claims with

22   respect to those losses.  Defining the precise contours of the class is a separate, and potentially

23   challenging, inquiry . . . but that is no reason to eliminate the presumption and deny certification.");

24   *In re Allstate Corp. Sec. Litig.*, No. 16-cv-10510, 2020 WL 7490280, at *4, 7 (N.D. Ill. Dec. 21, 2020)

---

[13] Robinhood's recent and large-scale effect on the marketplace and individual trading cannot be understated. *See, e.g.,* John Rekenthaler, *How the Robinhood Era Is Changing Stock-Market Investing,* Morningstrar, 04/01/2021, ("[T]he Robinhood Effect is a term that describes irrational stock price movements caused by [the manner in which] retail traders buy stocks [...].");  *In re January 2021 Short Squeeze Trading Litigation*, No. 21-md-2989, (S.D. Fla. May 18, 2021) (where Robinhood-imposed trading restrictions disrupted individual trading and global financial markets).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DENY CLASS CERT
NO. 4:20-CV-09328-YGR

1   (where defendant's 'no price-impact' argument unable to rebut plaintiff's fraud-on-the-market theory

2   after plaintiff's expert, combined with relevant discovery, tended to establish some logical linkage).

3   Plaintiff should not be precluded from establishing that Robinhood's lack of best execution has had

4   adverse effects on the market and on individual securities for Plaintiff and the class.

5               ii.      *Affiliated Ute* Omissions Presumption

6               Under *Affiliated Ute*, a presumption of reliance "is generally available to plaintiffs alleging

7   violations of section 10(b) based on omissions of material fact." *Binder v. Gillespie*, 184 F.3d 1059,

8   1063 (9th Cir. 1999). The theory behind this presumption is that direct proof of reliance in omission

9   cases requires "proof of a speculative negative"—that "I would not have bought had I known." *In re*

10  *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 16-cv-3435, 2018 WL

11  1142884, at *3 (N.D. Cal. Mar. 2, 2018) (citing *Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975)).

12  To relax this difficult evidentiary burden, *Affiliated Ute* allows reliance to be presumed in omission

13  cases "when the information withheld is material." *Deutsche Bank Sec. Ltd.*, 573 F.3d at 939. In cases

14  in which, as here, both omissions and misrepresentations are alleged, the presumption is appropriate

15  if "the case can be characterized as one that primarily alleges omissions." *Binder*, 184 F.3d at 1064.

16              As an initial matter, Defendants again ask this Court to upend fair and proper procedure with

17  a premature and inappropriate argument. Whether Plaintiff and the class can ultimately prove that

18  there are entitled to an *Affiliated Ute* presumption of reliance is a "difficult" merits inquiry that cannot

19  be resolved on a preemptive motion to deny class certification. *See Siemers v. Wells Fargo & Co.*,

20  243 F.R.D. 369, 374 (N.D. Cal. 2007) (*Affiliated Ute* presumption applied to mix case of omissions

21  and misrepresentations only after the court had been "immersed in this case through so many

22  hearings"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2 F.4th 1199,

23  1208 (9th Cir. 2021) (even where court determined that *Affiliated Ute* presumption did not apply, it

24  could only do so on a motion for summary judgment with a fully developed factual record).

25              In *Affiliated Ute*, the Supreme Court held that where a plaintiff's claim involves primarily a

26  failure by defendants to disclose material information, plaintiff is entitled to a presumption of reliance.

27  406 U.S. at 153-54. This is because "allegations of a uniform nondisclosure would make it impractical

28  for investors to affirmatively prove their lack of knowledge of defendants' practice . . . ." *Newton*,

259 F.3d at 177.   Thus, plaintiff is entitled to a presumption of reliance in circumstances where "reliance as a practical matter is impossible to prove." *Smith Barney*, 290 F.R.D. at 48 (citing *Wilson v. Conitech Telecomms., Corp*., 648 F.2d 88, 93 (2d Cir. 1981)).   As Robinhood customers could not know during the class period that it was violating its duty of best execution to generate profits at its customers' expense, it is impossible as a practical matter to prove that they relied on Robinhood to not breach its duty of best execution.   *Id.*; *see also UBS*, 2010 WL 2541166, at *26 (applying *Affiliated Ute* presumption "where reliance would be difficult to prove because Plaintiff's claim is based on a negative.").

Defendants argue that Plaintiff and the putative class are not entitled to the *Affiliated Ute* presumption of reliance because the CAC also alleges affirmative representations by Defendants regarding Robinhood's compliance with its duty of best execution.   Motion at 11.   The *Affiliated Ute* presumption is not undermined simply because a defendant makes misstatements at the same time it omits material information.   *See Siemers v. Wells Fargo & Co*., 243 F.R.D. 369 (N.D. Cal. 2007); *Fogarazzao v. Lehman Bros., Inc*., 232 F.R.D. 176, 186 (S.D.N.Y. 2005); *see also Dodona I, LLC v. Goldman, Sachs & Co*., 296 F.R.D. 261, 269–70 (S.D.N.Y. 2014) (*Affiliated Ute* presumption applies to claims "'involving *primarily* a failure to disclose,' which is not the same as cases involving *exclusively* a failure to disclose").   Indeed, in *Affiliated Ute* itself, defendants had also made express representations to the plaintiffs but the presumption still applied.   *See Affiliated Ute*, 406 U.S. at 146 (defendant dissuaded seller from transfer documents); at 147 (defendants solicited purchases of stock); at 152 (defendants were active in encouraging a market); and at 148 (defendants induced sales of stock).

In *Newton*, plaintiffs' claims rested on an implied misrepresentation of best execution from defendants combined with a failure to disclose a practice that violated this duty.   *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 271 (3d Cir. 1998).   Nonetheless, the *Affiliated Ute* presumption applied.   "Because their allegations of a uniform nondisclosure would make it impractical for investors to affirmatively prove their lack of knowledge of defendants' practice, the burden of rebutting a presumption of reliance is properly placed on defendants here." *Newton*, 259 F.3d at 177.

While this might be a mixed case, it still is one that primarily alleges omissions. Defendants rest its *Affiliated Ute* argument on one paragraph from the operative complaint. But all Defendants have done is point to one affirmative misrepresentation it made during the class period concerning commission free trading. Defendants ironically *omit* that this case is centrally about how "Robinhood misleadingly omitted payment for order flow from descriptions of its revenue sources." *See* ¶¶ 64-73. For years, Robinhood's retail communications to consumers *omitted* receipt of payment for order flow, even though it was Robinhood's single largest source of revenue. ¶ 7. And from 2014 to 2015, Robinhood *concealed* that it made over 80% of its revenue from payment for order flow. *See* ¶ 48 (emphasis added). By the end of 2016, Robinhood *did not disclose* new payment for order flow arrangements in its answer to the "How Robinhood Makes Money" FAQ on its website. Instead, at some point during 2016, Robinhood *deleted* the payment for order flow FAQ altogether. ¶¶ 64, 66-67 (emphasis added). In response to over 150 inquires between 2015 and August 2018, Robinhood's customer service representatives maliciously and *purposely did not identify* payment for order flow as one of the company's revenue sources. ¶¶ 70-71 (emphasis added). Because of the omissions alleged and the often "illusory" distinction between what constitutes an omission as opposed to a misrepresentation in securities fraud cases, "it would not be appropriate to terminate this case at the pleading stage for want of a reliance averment but instead to allow the development of the record on that question through discovery." *Crago*, 2017 WL 6550507, at *8; *Zola*, 172 F. Supp. 3d at 1069 (citing *Affiliated Ute*, 406 U.S. at 154).

### iii.      Fraudulent Scheme Liability Theory

Defendants, in a single conclusory sentence, argue that Plaintiff cannot rely on a fraudulent scheme liability theory because "the fraudulent scheme was not disclosed to the public." Motion at 11. That is wrong.

SEC Rule 10b-5(a) makes it unlawful to "employ any device, scheme, or artifice to defraud" and subsection (c) makes it unlawful to "engage in any act, practice, or course of business" that "operates . . . as a fraud or deceit." *Abdo v. Fitzsimmons*, No. 17-cv-851-TSH, 2021 WL 616324, at *5, 10 (N.D. Cal. Feb. 17, 2021) (citing *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100, 203 L. Ed. 2d 484 (2019). Together, "[t]hese provisions capture a wide range of [deceptive] conduct" and establish

classwide reliance through materiality; where a "reasonable investor might have considered the undisclosed facts important." *Id.* at *10, 14; *see also Stonridge Inv. Partners LLC v. Scientific– Atlanta, Inc.*, 552 U.S. 148, 1128 S. Ct. 761, 169 L.Ed. 2d 627 (2008).   A defendant's deceptive conduct must have been disclosed to the investing public, such that the conduct will be not be too remote to satisfy the requirement of reliance.  *See New York City Employees' Ret. Sys. v. Berry*, 616 F. Supp. 2d 987 (N.D. Cal. 2009).

Plaintiff has pled public disclosure in his scheme liability allegations.  Specifically, during the class period, Defendants engaged in a scheme pursuant to which it knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud, deceit, and/or manipulation upon Plaintiff and the Class, uniformly denying its customers best execution.  ¶¶ 111, 113-120.  For example, to effectuate this scheme, Robinhood engaged in unfair, unlawful, deceptive, and misleading material acts and omissions, with a "scheme to charge backdoor commission fees without disclosing the impact of those fees on Plaintiff and the Class." ¶ 97.  Further, Defendants' scheme included deceptive acts related to "customer communications as to the execution of trades and Robinhood's revenue sources." ¶ 7.[14] Plaintiff has adequately "alleg[ed] that Defendant's deceptive conduct was communicated to the public." *New York City Employees' Ret. Sys.*, 616 F. Supp. 2d at 997-98.  Plaintiff has adequately shown Defendants' publicly disclosed scheme, and he should be allowed to pursue his theory through discovery.

#### iv.    Fraud-on-the-Regulatory Process Theory

Adopted in *Arthur Young & Co. v. U.S. District Court*, 549 F.2d 686, 695 (9th Cir. 1977), the fraud-on-the-regulatory-process theory creates a presumption of reliance when "the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 328 F. Supp. 3d

---

[14] As alleged, Robinhood, in 2018 inaccurately changed its FAQ page that discussed payment for order flow and Robinhood's order execution quality. ¶ 75. Then, it instructed customer service representatives to direct customers to the "How Robinhood Makes Money" FAQ page or use the language of the misleading FAQ answer when responding to general questions about how Robinhood made money."  ¶¶ 74-77.

963, 971 (N.D. Cal 2018).  Defendants have not brought forth any argument regarding the fraud-on-the-regulatory process theory.  Plaintiff has pled that Defendants deceived the media, investors, governmental entities including the SEC, and the public at large through its obfuscation of the truth.  *See* ¶¶ 74, 116.  Plaintiff should be allowed to prove his well-pled theory on a proper motion for class certification, particularly because Defendants have foregone any argument against this theory of reliance in the instant motion.

### c.     A Class Action Is Superior to Individual Claims

Defendants argue that a class action is not superior to other available legal remedies due to the "individualized inquires" relating to class damages.  Motion at 12.  That is wrong.  As discussed, *supra*, such concerns are unwarranted as Plaintiff can establish classwide economic loss.

Rule 23 provides the following factors in determining whether a class action is superior to other available methods of adjudication:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Such factors are non-exhaustive.  *See In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 316 (N.D. Cal. Sept. 27, 2018).  Importantly, "courts have long recognized that class actions are a particularly appropriate and desirable means to resolve claims based on . . . securities laws" and "easily satisfy the superiority requirement of Rule 23."  *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. at 80 (quoting *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) and *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999); *See also Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-7406418, 2016 WL 7406418 at *2 (N.D. Cal. Dec. 22, 2016) (finding that "the Ninth Circuit has found Rule 23(b)(3) class actions to be 'useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants.'") (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).  Similar cases have found all factors to weigh in favor of class certification. *See In re NYSE Specialists*

1   *Sec. Litig.*, 260 F.R.D. at 80 (finding facts of case weighed in favor of class certification under all

2   Rule 23(b)(3) factors.).

3       Defendants do not have a sincere desire to adjudicate tens of thousands of separate trials for

4   the claims alleged in the CAC.  Tellingly, their Motion does not advocate for a more fair and efficient

5   alternative.  Motion at 12.  This is nothing more than an attempt to escape liability.  The Court should

6   not entertain such arguments, especially this early in the proceedings.

7           **2.      A Class Can Be Certified Under Rule 23(b)(1) And (b)(2)**

8       Defendants fleetingly argue that that under Rule 23(b)(1) and 23(b)(2) Plaintiff cannot

9   maintain class certification.  Motion at 12.  That is wrong.

10      Under Rule 23(b)(1)(A), "prosecuting separate actions by or against individual class members

11  [here] would create a risk of . . . inconsistent adjudications . . . that would establish incompatible

12  standards of conduct" for Defendant as a broker-dealer.  This is because Defendants' deceptive course

13  of conduct had a uniform effect on Plaintiff and the Class by generating uniformly inferior execution

14  quality.  ¶ 123.  As such, Defendants "breached its fiduciary duties to Plaintiff and the Class,"

15  (¶¶ 185-188), and a swath of individual suits based on that breach would create a risk of 'inconsistent

16  and varying adjudications." *See* ¶ 105; *Munro v. University of Southern California*, No. 16-cv-6191,

17  2019 WL 7842551, at *8-9 (C.D. Cal. Dec. 20, 2019).  And under Rule 23(b)(1)(B), individual actions

18  would legitimately impair or impede the ability of class members to protect their interests.  Plaintiff

19  has alleged a $34.1 million loss in price improvement.  ¶ 82.  Therefore, because it has millions of

20  customers who did not get best execution, "defendant may be liable for more money than [is]

21  available" which could leave non-class individuals and future plaintiffs without relief.  *See Castro*

22  *Valley Union 76, Inc. v. Vapor Sys. Tech., Inc.*, No. 11-cv-299, 2012 WL 5199458, at *6 (N.D. Cal.

23  Oct. 22, 2012).

24      Class certification under Rule 23(b)(2) is also appropriate because Defendants "ha[ve] acted

25  or refused to act on grounds that apply generally to the class," so final classwide injunctive/

26  declaratory relief is appropriate.  Despite Defendants' contention, their conduct need not be ongoing

27  for Plaintiff to obtain injunctive or declaratory relief.  *See LaDuke v. Nelson*, 762 F.2d 1318, 1324

28  (9th Cir. 1985) (holding plaintiff seeking injunctive relief can show "likelihood of similar injury in

1  the future"). Plaintiff has shown such likelihood of future injury by alleging that Defendants'

2  purposeful concealment of its improper order routing procedures is "a pattern or practice that is

3  generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

4  Plaintiff is entitled to pursue certification under Rule 23(b)(1) and 23(b)(2) because of Defendants'

5  classwide conduct.

6  ## IV.    CONCLUSION

7      For the reasons provided above, Plaintiff respectfully requests that the Court deny Defendants'

8  motion to deny class certification in its entirety.

9  Dated:  August 20, 2021                          Respectfully submitted,

10                                                   **AHDOOT & WOLFSON, PC**

11                                                   */s/ Robert Ahdoot*

12                                                   Robert Ahdoot (SBN 172098)
                                                     Tina Wolfson (SBN 174806)

13                                                   Bradley K. King (SBN 274399)
                                                     2600 West Olive Avenue, Suite 500

14                                                   Burbank, California 91505
                                                     Tel: (310) 474-9111

15                                                   Fax: (310) 474-8585
                                                     twolfson@ahdootwolfson.com

16                                                   rahdoot@ahdootwolfson.com
                                                     bking@ahdootwolfson.com

17
                                                     **BURSOR & FISHER, P.A.**
18                                                   Scott A. Bursor (SBN 276006)
                                                     Sarah N. Westcot (SBN 264916)
19                                                   701 Brickell Ave, Suite 1420
                                                     Miami, FL 33131
20                                                   Telephone: (305) 330-5512
                                                     Facsimile: (305) 679-9006
21                                                   scott@bursor.com
                                                     swestcot@bursor.com
22
                                                     **LIDDLE & DUBIN, P.C**.
23                                                   Nicholas A. Coulson (*pro hac vice*)
                                                     Matthew Z. Robb (*pro hac vice*)
24                                                   975 E. Jefferson Ave.
                                                     Detroit, Michigan 48207
25                                                   Tel: 313-392-0015
                                                     Fax: 313-392-0025
26                                                   ncoulson@ldclassaction.com
                                                     mrobb@ldclassaction.com
27
                                                     *Plaintiff's Co-Lead Counsel*
28