C. Brandon Wisoff (State Bar No. 121930)
bwisoff@fbm.com
Russell Taylor (State Bar No. 320375)
rtaylor@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Maeve L. O'Connor (appearance pro hac vice)
Elliot Greenfield (appearance pro hac vice)
Brandon Fetzer (appearance pro hac vice)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Telephone: 212.909.6000
Email: mloconnor@debevoise.com
Email: egreenfield@debevoise.com
Email: bfetzer@debevoise.com

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE ROBINHOOD ORDER FLOW LITIGATION | Master File No. 4:20-cv-09328-YGR<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION**<br><br>Date:  October 19, 2021<br>Time:  2:00 p.m.<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Ctrm:  1, 4th Floor |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. DISCOVERY CANNOT CURE THE DEFECTS IN PLAINTIFF'S CLASS. ........................ 2

II. PLAINTIFF CANNOT CERTIFY A CLASS UNDER RULE 23(b)(3). ................................ 4

    A. Plaintiff Cannot Establish Classwide Economic Loss Through Common Proof. .............. 4

        1. *In re NYSE Specialists* Is Not a Best Execution Case. ................................................ 4

        2. The SEC's Estimate of Aggregate Damages Is Not a Substitute for Individualized Proof of Injury. ........................................................................................ 5

    B. Plaintiff Is Not Entitled to a Classwide Presumption of Reliance. ..................................... 6

    C. Individualized Inquiries Would Make Class Treatment Impracticable. ............................. 7

III. NEITHER RULE 23(b)(1) NOR RULE 23(b)(2) APPLIES. .................................................... 7

CONCLUSION ............................................................................................................................... 8

# TABLE OF AUTHORITIES

**CASES**

*Amaraut v. Sprint/United Mgmt. Co.*,
    No. 19-CV-411, 2020 WL 8024170 (N.D. Cal. Jan. 14, 2020) ............................................... 4

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................................. 6

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) .............................................................................................. 6

*Carroll v. Wells Fargo & Co.*,
    No. 15-CV-2321, 2016 WL 4696852 (N.D. Cal. Sept. 8, 2016) ........................................... 4

*Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*,
    No. 11-CV-0299, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012) ........................................... 8

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ................................................................................ 3

*Farr v. Acima Credit LLC*,
    No. 20-CV-8619, 2021 WL 2826709 (N.D. Cal. July 7, 2021) ............................................. 3

*Ford v. TD Ameritrade Holding Corp.*,
    995 F.3d 616 (8th Cir. 2021) ........................................................................................ 3, 4, 5

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    141 S. Ct. 1951 (2021) ......................................................................................................... 6

*In re NYSE Specialists Securities Litigation*,
    260 F.R.D. 55 (S.D.N.Y. 2009) ..................................................................................... 1, 4, 5

*In re Outlaw Lab., LP Litig.*,
    No. 18-CV-1882, 2019 WL 2358692 (S.D. Cal. June 4, 2019) ............................................ 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    328 F. Supp. 3d 963 (N.D. Cal. 2018) .................................................................................. 7

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .................................................................................. 3

*In re Walls*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001) .................................................................................. 3

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ........................................................................................ 3, 4, 5, 6

*Nguyen v. Baxter Healthcare Corp.*,
    275 F.R.D. 503 (C.D. Cal 2011) .................................................................................... 3, 4

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .............................................................................................................. 8

*Pearce v. UBS PaineWebber, Inc.*,
    No. 3:022409-17, 2004 WL 5282962 (D.S.C. Aug. 13, 2004) ................................... 3

*Ryan v.* Jersey *Mike's Franchise Sys.*,
    No. 13-CV-1427, 2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) .............................. 3

*Sousa v. 7-Eleven, Inc.*,
    No. 19-CV-2142, 2020 WL 6399595 (S.D. Cal. Nov. 2, 2020) ................................ 3

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) .............................................................................................................. 7

*Telco Grp., Inc. v. Ameritrade, Inc.*,
    No. 05-CV-387, 2007 WL 203949 (D. Neb. Jan. 23, 2007) ..................................... 3

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................................................ 7, 8

Defendants respectfully submit this reply in support of their Motion to Deny Class Certification.

**PRELIMINARY STATEMENT**

Plaintiff's Opposition only reinforces that his claims are fundamentally ineligible for class treatment for reasons that discovery cannot cure. There is no dispute that courts faced with best execution claims have uniformly denied class certification because economic loss in such cases cannot be proven on a classwide basis through common proof. That is because, unlike in a typical securities class action, economic loss in a best execution case does not depend on a price decline in a single stock, but instead requires a fact-intensive inquiry into each of the individual trades during the putative class period to determine whether a better price reasonably could have been obtained for that specific trade at the exact time it was executed.

Confronted with these precedents, Plaintiff does not offer any method for proving economic loss without resorting to an individualized, trade-by-trade analysis. Instead, Plaintiff insists that he is entitled to take discovery for discovery's sake, without making any effort to explain how the evidence he expects to glean could cure the defects in his class claims. It cannot; the need for individualized inquiries is inherent to the nature of best execution claims. Plaintiff then attempts to avoid his economic-loss problem by citing *In re NYSE Specialists Securities Litigation*, 260 F.R.D. 55 (S.D.N.Y. 2009), and an SEC settlement order, neither of which provides any support to his position. The *NYSE* case did not involve best execution claims, and the court expressly found that it was not comparable to best execution cases. And although Plaintiff is correct that the SEC order at issue purported to compute *aggregate* losses in price improvement for at least certain Robinhood customers, the law is crystal clear that calculating aggregate damages does not relieve Plaintiff of his burden to prove – through common, classwide evidence – that each individual class member suffered economic loss.

Plaintiff's class claims also founder on the need for individualized proof of reliance, as Plaintiff fails to establish his entitlement to a presumption of reliance that could meet his burden on this element. Unlike a typical securities class action, where a company's misrepresentations are presumed to impact its stock price, any alleged misrepresentation by Robinhood about its

1  execution quality contains no information about any public company and therefore could not have

2  impacted the market price of any stock bought or sold on Robinhood's trading platform.

3  Plaintiff's hodgepodge of other presumptions likewise have no application here.

4      Given the highly individualized nature of best execution claims, Plaintiff makes no effort

5  to explain how any of the superiority factors of Rule 23(b)(3) is satisfied.  Nor does he refute that

6  the necessity of holding mini trials on each of the millions of trades in the class period would be a

7  logistical nightmare precluding class certification.

8      Plaintiff does no better with Rules 23(b)(1) or 23(b)(2).  As to Rule 23(b)(1)(B), Plaintiff's

9  unsupported speculation that Defendants could be unable to satisfy a judgment does not make this

10 a limited fund case.  Rule 23(b)(1)(A) and 23(b)(2) classes cannot be certified because injunctive

11 relief is unavailable in this action as a matter of law.

12     The Court should grant Defendants' motion to deny class certification.

13 **ARGUMENT**

14     Plaintiff does not dispute that courts have uniformly held that best execution claims are not

15 susceptible to class treatment, and he fails to identify any evidence that he expects to find in

16 discovery that could lead to a different result in this case.

17 **I.   DISCOVERY CANNOT CURE THE DEFECTS IN PLAINTIFF'S CLASS.**

18     The Opposition offers no basis to distinguish this case from other best execution cases in

19 which courts have consistently denied class certification because economic loss cannot be proven

20 on a class-wide basis.  (Mem. 9.)  Although Plaintiff notes that at least some limited discovery was

21 allowed in those cases, the evidence adduced in discovery did not influence the courts' holdings

22 and therefore does not support Plaintiff's claim that discovery would change the outcome.  (Mem.

23 4.)  At most, pre-certification discovery in those cases – which was largely limited to individual

24 rather than class discovery[1] – only confirmed what was obvious to begin with:  the predominance

25 of individualized issues precludes class certification for best execution claims.  (Mem. 4-5.)

---

[1]     In three of the four cases, discovery was limited to the named plaintiff's trading records and did not include class discovery and, in the fourth case, there was only "staged class discovery."  (Mem. 4, 10.)

There is no reason to think discovery would yield a different result here.  Most strikingly, Plaintiff never explains how he could establish economic loss without a trade-by-trade analysis of the millions of trades during the class period.  Plaintiff's vague reference in a footnote to Robinhood's trading data and "expert reports" underscores the futility of discovery, as those are the same types of evidence that courts have found inadequate to permit class certification in every other best execution case.  *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 621 (8th Cir. 2021) (finding expert's proposed analysis of "class trading history data" could not establish predominance); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-88 (3d Cir. 2001) (same for proposed expert analysis of transaction data); *Telco Grp., Inc. v. Ameritrade, Inc.*, No. 05-CV-387, 2007 WL 203949, at *8 (D. Neb. Jan. 23, 2007) (same for evidence of lead plaintiff's trades); *Pearce v. UBS PaineWebber, Inc.*, No. 3:022409-17, 2004 WL 5282962, at *11 (D.S.C. Aug. 13, 2004) (same for class trading data).

Thus, as the Opposition makes plain, discovery would do no more than "waste . . . the parties' and judicial resources."  (Mem. 7 (citing *In re Walls*, 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001)).)  This is precisely the situation in which courts have granted pre-discovery denials of class certification – as Plaintiff implicitly acknowledges by relying on such cases in his Opposition.  *See Farr v. Acima Credit LLC*, No. 20-CV-8619, 2021 WL 2826709 at * 7 (N.D. Cal. July 7, 2021) (granting motion where typicality was not satisfied and "plaintiff [had not] identified any discovery that would dictate a different conclusion") (cited in Opp'n at 6); *Ryan v. Jersey Mike's Franchise Sys.*, No. 13-CV-1427, 2014 WL 1292930, at *8 (S.D. Cal. Mar. 28, 2014) (cited in Opp'n at 3-4) (granting motion where it was "apparent from the facts before th[e] Court that discovery will not yield additional facts" that could justify class treatment).

Plaintiff's remaining authorities are not to the contrary.  None of them are best execution cases and most do not even involve motions to deny class certification.  (Opp'n 3-4 (citing *Sousa v. 7-Eleven, Inc.*, No. 19-CV-2142, 2020 WL 6399595 (S.D. Cal. Nov. 2, 2020) (motion to dismiss, strike class allegations, and stay action); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (motion to strike class definition); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1246 (C.D. Cal. 2011) (same); *Nguyen v. Baxter*

1  *Healthcare Corp.*, 275 F.R.D. 503, 507 (C.D. Cal 2011) (discovery motion); *Carroll v. Wells
2  Fargo & Co.*, No. 15-CV-2321, 2016 WL 4696852, at *2 (N.D. Cal. Sept. 8, 2016) (same);
3  *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-CV-411, 2020 WL 8024170, at *8-9 (N.D. Cal. Jan.
4  14, 2020) (same)).)  In the only case that does involve a motion to deny class certification, *In re
5  Outlaw Lab., LP Litig.*, unlike here, there was no dispute that economic loss could be established
6  through common evidence on a class-wide basis.  No. 18-CV-1882, 2019 WL 2358692, at *8-9
7  (S.D. Cal. June 4, 2019).

## II. PLAINTIFF CANNOT CERTIFY A CLASS UNDER RULE 23(b)(3).

### A. Plaintiff Cannot Establish Classwide Economic Loss Through Common Proof.

Unable to refute that proving economic loss in a best execution case requires an individualized, trade-by-trade analysis, Plaintiff instead focuses on an inapposite market manipulation case and attempts to substitute an estimate of *aggregate* damages for proof that each *individual* member of the putative class suffered an injury.  Neither argument helps Plaintiff meet his burden of showing that classwide economic loss can be established through common evidence.

### 1. *In re NYSE Specialists* Is Not a Best Execution Case.

Plaintiff's reliance on *In re NYSE Specialists Securities Litigation* – which did not involve best execution claims – is unavailing.  (Opp'n 7-8.)  In that case, the plaintiff alleged that NYSE securities specialists "us[ed] their knowledge of impending customer orders to trade ahead of those orders for the benefit of the[] [specialists'] own accounts" instead of matching customers' orders to third-party buyers and sellers.  *Ford*, 995 F.3d at 623 (citing *NYSE*, 260 F.R.D. at 64).  The *NYSE* court explained that, unlike in best execution cases, the nature of this alleged market manipulation made it relatively simple to determine by common proof whether customers were injured by the specialists' wrongdoing.  *NYSE*, 260 F.R.D. at 79-80 (explicitly distinguishing best-execution precedent *Newton v. Merrill Lynch*).  The NYSE had an internal record of (*i*) each instance in which one of its specialists traded ahead of a customer order and (*ii*) which third-party offers to buy or sell the specialists intercepted for their own benefit.  *Id.* at 66.  This data could be fed into an algorithm that compared "customers' orders with specific trades made by the specialists" to identify "the outcome [that customers] would have received" but for the specialists'

1  alleged misconduct.  *See Ford*, 995 F.3d at 623; *NYSE*, 260 F.R.D. at 66.

2  The same is not true for best execution cases.  In *Ford*, the Eighth Circuit expressly
3  distinguished *NYSE* and explained that, in contrast to the "limited matching function" required in
4  that case, establishing economic loss in a best execution case requires a factfinder to consider
5  every individual class member's trades across the class period and then identify and compare them
6  to all "reasonably available prices for executed trades across all market centers" at the time of each
7  trade to determine whether the class member could have gotten a better execution price.  *See id.* at
8  623-24.  FINRA rules require broker-dealers to consider many factors in determining whether a
9  particular price is the best reasonably available, and those factors "vary from class member to
10 class member and, for each class member, from trade to trade." *Newton*, 259 F.3d at 187.  (Mem.
11 3, 8-9.)  Plaintiff's Opposition offers no basis to conclude that these challenges could somehow be
12 overcome here.

### 2. The SEC's Estimate of Aggregate Damages Is Not a Substitute for Individualized Proof of Injury.

15 Plaintiff's effort to rely on a purported calculation by the SEC that Defendants' alleged
16 conduct "resulted in $34.1 million in customer disadvantage" impermissibly seeks to substitute
17 aggregate damages for proof of individual economic loss.  (Opp'n 7-9.)  Ample authority makes
18 clear that the "ability to calculate the aggregate amount of damages does not absolve" Plaintiff of
19 the "duty to prove each [class member] was harmed by the allegedly unlawful routing practices."
20 *Newton*, 259 F.3d at 188.  That is because "the issue is not the calculation of damages but whether
21 or not class members have any claims at all."  *Id.* at 189; *accord Ford*, 995 F.3d at 622 (a plaintiff
22 must prove not only damages but that the allegedly wrongful "order routing practices caused [each
23 class member] to suffer [an] economic loss" in the first place).

24 The SEC's purported calculation of aggregate "loss in price improvement" for "certain
25 Robinhood orders" during the class period does not help Plaintiff identify which customers were
26 injured, much less establish any such injury through common, classwide proof.  *See*
27 Administrative Order, File No. 3-20171 ¶ 42 (cited in Opp'n at 9).  The SEC does not claim to
28 have analyzed any individual class member's trades to determine whether those "trades could have

1  been executed at better prices," as is required to show economic loss for each class member.
2  *Newton*, 259 F.3d at 189.  Moreover, the SEC states that its calculation applies only to "certain"
3  orders, not all of the orders in the putative class, underscoring that it is not a substitute for
4  individualized proof of injury.

   **B.    Plaintiff Is Not Entitled to a Classwide Presumption of Reliance.**

6           Plaintiff does not dispute that, in the absence of a presumption of reliance, the need to
7  prove reliance on an individualized basis will preclude class certification under Rule 23(b)(3).
8  (Mem. 11-12.)  In an effort to get around this issue, Plaintiff tosses a number of presumptions at
9  the wall in the hope that one will stick.  But, as set forth in greater detail in Robinhood's reply
10 brief in support of its motion to dismiss, none of those presumptions apply here.
11          *First*, the *Basic* presumption does not apply for the simple reason that any alleged
12 misrepresentations by Robinhood about PFOF or execution quality did not impact the market price
13 of any security.  *See Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1957
14 (2021) (The *Basic* presumption "is premised on the theory that investors rely on the market price
15 of a company's security, which in an efficient market incorporates all of the company's public
16 misrepresentations.") (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)).  Plaintiff does not, and
17 cannot, cite any decision in which a court has applied that presumption in a best execution case.
18          *Second*, the *Affiliated Ute* presumption does not apply because Plaintiff does not
19 "primarily" allege omissions and, in fact, explicitly states that Robinhood's alleged misstatement
20 regarding "execution quality and speed" is the "fundamental deception at the heart of this
21 lawsuit."  (Dkt. No. 72 at 18.)  *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)
22 (*Affiliated Ute* applies only to a case that "primarily alleges omissions").  By contrast, *Newton*
23 applied the *Affiliate Ute* presumption on the basis that the claims were based entirely on omissions
24 and there were no allegations of affirmative misstatements.  259 F.3d at 176 (where claims were
25 based solely on an omissions theory, holding that alleged "failure to disclose . . . warrant[ed] a
26 presumption of reliance" under *Affiliated Ute*).
27          *Third*, Plaintiff's conclusory allegation of a "fraudulent scheme" under Rules 10b-5(a) and
28 10b-5(c), which he all but abandons in response to Robinhood's motion to dismiss, does not

1  support a presumption of reliance because Plaintiff does not allege that the scheme was publicly

2  disclosed, as required by Supreme Court authority.  *See Stoneridge Inv. Partners, LLC v. Sci.-*

3  *Atlanta*, 552 U.S. 148, 159 (2008) (no presumption of reliance applied because the "deceptive acts

4  were not communicated to the public" and thus "[n]o member of the investing public had

5  knowledge, either actual or presumed," of the fraudulent scheme).

6        *Fourth*, the presumption of reliance based on a purported "fraud-on-the-regulatory-

7  process" has no application here because Plaintiff does not allege that he is "the purchaser of an

8  original issue security," that he relied "on the integrity of the regulatory process," or that

9  Robinhood deceived regulators in the process of issuing a security.  *In re Volkswagen "Clean*

10  *Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 328 F. Supp. 3d 963, 971 (N.D. Cal. 2018).

11        **C.**     **Individualized Inquiries Would Make Class Treatment Impracticable.**

12        Rather than arguing that any of the Rule 23(b)(3) superiority factors is satisfied, Plaintiff

13  notes only that federal securities cases often are tried as class actions.  (Opp'n 19.)  But this is not

14  a conventional securities case where reliance can be presumed and economic loss can be

15  established through common proof on a classwide basis.  (Mem. 6-8.)  To determine whether

16  those elements are satisfied here, this Court would need to evaluate each of the millions of trades

17  during the class period on an individual basis, presenting overwhelming case management

18  problems.  (Mem. 7, 12.)

19  **III.**    **NEITHER RULE 23(b)(1) NOR RULE 23(b)(2) APPLIES.**

20        Plaintiff's half-hearted efforts to cram his claims into the framework of Rules 23(b)(1)(A),

21  23(b)(1)(B), or 23(b)(2) merits little response.

22        With respect to Rule 23(b)(1)(A), plaintiff does not explain how Defendants are obligated

23  to treat all customers alike, either by law (such as in the case of a public utility) or practical

24  necessity (as with a "riparian owner using water as against downriver owners").  (Mem. 12-13.)

25  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.), *opinion amended on denial*

26  *of reh'g*, 273 F.3d 1266 n.9 (9th Cir. 2001) (outlining other examples where Rule 23(b)(1)(A)

27  applies, such as actions to enjoin the state from terminating unemployment

28  compensation).  Moreover, Rule 23(a)(1) is "not appropriate in an action for [individualized]

Farella Braun +
Martel LLP

7
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DENY CLASS CERTIFICATION
(No. 4:20-cv-09328-YGR)

damages," which is the only form of relief that Plaintiff could seek here. *Id.*

As to Rule 23(b)(1)(B), Plaintiff's unsupported speculation that a $34.1 million judgment may somehow exceed Defendants' ability to pay does not transform this into a limited fund case for which a mandatory class may be certified.[2] (Opp'n 20.) *See Zinser*, 253 F.3d at 1193 ("[T]o satisfy Rule 23(b)(1)(B), a class action plaintiff must demonstrate that the case involves a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims."); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842, 845 (1999) (cautioning against "adventurous application of Rule 23(b)(1)(B)"). No such fund has been formed and there is no basis to conclude that Robinhood faces insolvency.

Finally, Rule 23(b)(2) is inapplicable because Plaintiff does not dispute that his state-law claims, which are the only claims for which he seeks injunctive relief, are precluded by SLUSA and does not oppose their dismissal. (Opp'n 20; Dkt. No. 72 at 1 n.1.) Plaintiff cannot seek injunctive or declaratory relief for his other claims, as he concedes that the conduct at issue is not ongoing and offers no more than conjecture that it could recur. (Opp'n 20-21; Mem. 13.)

## **CONCLUSION**

For the reasons set forth herein and in Defendants' Motion to Dismiss, the Court should deny class certification.

Dated: September 24, 2021  FARELLA BRAUN + MARTEL LLP

By: /s/ C. Brandon Wisoff
    C. Brandon Wisoff

Attorneys for Defendants
ROBINHOOD MARKETS, INC.;
ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURITIES, LLC

---

[2] To the extent courts have applied Rule 23(b)(1)(B) to actions for damages outside of limited funds, it has been in the context of ERISA actions where the decision would "authorize Plan-wide relief" and a "failure to certify the class would leave future plaintiffs [*i.e.*, nonparties] without relief." *Castro Valley Union 76, Inc. v. Vapor Sys. Techs., Inc.*, No. 11-CV-0299, 2012 WL 5199458, at *6 (N.D. Cal. Oct. 22, 2012).